# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>Oasis Focus Fund LP and Quadre Investments, L.P.,<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. |

## PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

OF COUNSEL:

Duane L. Loft*
Melissa J. Kelley*
Brianna Hills Simopoulos*
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
duane.loft@pallasllp.com
melissa.kelley@pallasllp.com
brianna.simopoulos@pallasllp.com

*Attorneys for Petitioners*

*\*Pro hac vice* applications forthcoming

Jamie L. Brown
HEYMAN ENERIO GATTUSO &
HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
Telephone: (302) 472-7300
jbrown@hegh.law

Dated: December 23, 2022

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ................................................................................ 3

      A.    Parties to the Foreign Proceeding and the Merger. ..................... 3

      B.    The Appraisal Proceeding. .......................................................... 7

      C.    Respondents and the Discovery Sought....................................... 8

ARGUMENT .................................................................................... 9

I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782.......... 10

      A.    Respondents are "Found In" this District. ................................. 10

      B.    The Discovery Sought is "For Use" in a Foreign Proceeding. ................. 10

      C.    Petitioners are "Interested Persons."........................................ 11

      D.    Section 1782 Applies Extraterritorially. ................................... 12

II.    The DISCRETIONARY *INTEL* FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY............................................................................ 12

      A.    *Intel* I: Respondents are Nonparticipants in the Appraisal Proceeding. ... 12

      B.    *Intel* II: The Grand Court Will Be Receptive to the Requested Discovery. ............................................................................... 13

      C.    *Intel* III: Petitioners are Not Circumventing Foreign Proof-Gathering Restrictions. ............................................................................. 15

      D.    *Intel* IV: The Subpoenas are Not Unduly Burdensome. .......................... 16

CONCLUSION................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*AbbVie Inc., et al. v. Boehringer Ingelheim Int'l GmbH,*
2018 WL 2337133 (D. Del. May 23, 2018)................................................................ 18

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.,*
785 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................................... 15

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
673 F.3d 76 (2d Cir. 2012)...................................................................................... 16

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.,*
798 F.3d 113 (2d Cir. 2015).................................................................................... 10

*Euromepa, S.A. v. R. Esmerian, Inc.,*
51 F.3d 1095 (2d Cir. 1995).................................................................................... 19

*Gushlak v. Gushlak,*
486 F. App'x 215 (2d Cir. 2012) ............................................................................. 15

*In re Accent Delight Int'l Ltd.,*
2018 WL 2849724 (S.D.N.Y. June 11, 2018) ......................................................... 19

*In re Accent Delight Int'l Ltd.,*
869 F.3d 121 (2d Cir. 2017).............................................................................. 10, 11

*In re Appl. of Temporary Servs. Ins. Ltd.,*
2009 WL 2843258 (W.D.N.Y Aug. 28, 2009) ........................................................ 11

*In re Application of Athos Asia Event Driven Master Fund,*
No. 1:21-MC-00208-GBD, ECF No. 8 (S.D.N.Y. Mar. 3, 2021) ........................... 15

*In re Application of Athos Asia Event Driver Master Fund,*
2021 WL 1611673 (E.D. Mo. Apr. 26, 2021)......................................................... 15

*In re Application of Biomet Orthopaedics Switzerland GMBH,*
742 F. App'x 690 (3d Cir. 2018) ........................................................................ 9, 13

*In re Application of Gilead Pharmasset LLC,*
2015 WL 1903957 (D. Del. Apr. 14, 2015)............................................................ 13

*In re Aso,*
2019 WL 2345443 (S.D.N.Y. June 3, 2019) .......................................................... 18

*In re Bayer AG,*
146 F.3d 188 (3d Cir. 1998)............................................................................ 2, 9, 17

*In re Chevron Corp.*,
633 F.3d 153 (3d Cir. 2011)............................................................................. 10

*In re del Valle Ruiz*,
342 F. Supp. 3d 448 (S.D.N.Y. 2018), *aff'd* 939 F.3d 520 (2d Cir. 2019) ............ 12

*In re Dickson*,
2020 WL 550271 (S.D.N.Y. Feb. 4, 2020)........................................................ 14

*In re Ex Parte Application of Porsche Automobil Holding SE*,
2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ..................................................... 19

*In re FourWorld Event Opportunities, LP*,
No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021)................................. 15

*In re FourWorld Opportunities, LP*,
No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021)........................... 15, 20

*In re Gushlak*,
2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ................................................... 18

*In re Hopkins*,
2020 WL 733182 (N.D. Cal. Feb. 13, 2020) .................................................... 14

*In re Iraq Telecom Ltd.*,
2021 WL 5177603 (E.D. Pa. Nov. 5, 2021) ..................................................... 12

*In re Kuwait Ports Auth.*,
2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) .............................................. 14, 18

*In re Letter of Request from Supreme Ct. of Hong Kong*,
138 F.R.D. 27 (S.D.N.Y. 1991) ...................................................................... 18

*In re Liverpool Ltd. P'ship*,
2021 WL 3793901 (D. Del. Aug. 26, 2021) .............................................. passim

*In re Mota*, 2020 WL 95493 (D. Del. Jan. 8, 2020)............................................. 1

*In re Mother's Milk, Inc.*,
2020 WL 2514315 (S.D.N.Y. May 15, 2020) .................................................... 19

*In re O'Keeffe*,
2015 WL 540238 (D.N.J. Feb. 10, 2015), *aff'd sub nom. In re The Application of Kate
O'Keeffe for Assistance Before a For. Trib.*, 2015 WL 5039723 (D.N.J. Aug. 26,
2015), *aff'd sub nom. In re O'Keeffe*, 646 F. Appx. 263 (3d Cir. 2016)........................... 14, 15

*In re O'Keeffe*,
646 Fed.Appx. 263 (3d Cir. 2016) ................................................................ 12

iii

*In re Penner*,
   2017 WL 5632658 (D. Mass. Nov. 22, 2017) ................................................................. 15

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018) .......................................................................... 15

*In re Request for Jud. Assistance from 13th Fam. Ct. of Istanbul, Turkey in Matter of Canbilek*,
   2022 WL 721912 (D.N.J. Feb. 18, 2022) ...................................................................... 13

*Int'l Seaway Trading Corp. v. Target Corp.*,
   2021 WL 672990 (D. Minn. Feb. 22, 2021) .................................................................. 20

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ............................................................................................... passim

*Kulzer v. Esschem, Inc.*,
   390 F. App'x. 88 (3d Cir. 2010) ........................................................................... 11, 16

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) .......................................................................................... 16

*United States v. $110,000 in U.S. Currency*,
   2021 WL 2376019 (N.D. Ill. June 10, 2021) ................................................................ 20

*Via Vadis Controlling GmbH v. Skype, Inc.*,
   2013 WL 646236 (D. Del. Feb. 21, 2013) ..................................................................... 10

*Walsh v. Tara Constr., Inc.*,
   2022 WL 1913340 (D. Mass. June 3, 2022) .................................................................. 19

**Statutes**

28 U.S.C. § 1782 .................................................................................................. passim

**Rules**

Fed. R. Civ. P. 30(b)(6) ......................................................................................... 1, 19

Fed. R. Civ. P. 45(c)(1) ............................................................................................. 19

## EX PARTE APPLICATION

Oasis Focus Fund LP and Quadre Investments, L.P. ("**Petitioners**") respectfully submit this *ex parte* application (the "**Application**") pursuant to 28 U.S.C. § 1782 ("**Section 1782**") seeking an order: (a) granting Petitioners leave to serve subpoenas (the "**Subpoenas**") on Kroll, LLC (f/k/a Duff & Phelps, LLC) ("**Duff & Phelps**") and Kroll Securities, LLC (f/k/a Duff & Phelps Securities, LLC) ("**DPS,**" and together with Duff & Phelps, the "**Respondents**"); (b) directing Respondents to produce the tailored materials described in the Subpoenas within thirty days of service of the Subpoenas; (c) directing Respondents to each provide a witness to appear for a Rule 30(b)(6) deposition in compliance with the Subpoenas on a mutually agreeable date and within a reasonable time after Respondents' confirmation of the final production in response to the Subpoenas; and (d) granting any and all other relief to Petitioners as the Court deems just and proper.

Proceeding *ex parte* under Section 1782 is appropriate here. As multiple courts in this District have recognized, Section 1782 applications are "often" granted *ex parte* "because, *inter alia*, witnesses and other recipients can raise objections and otherwise exercise their due process rights by motions to quash." *In re Mota*, 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020).

## PRELIMINARY STATEMENT

Petitioners respectfully submit this Application pursuant to Section 1782 to take limited discovery from two corporations found in this District for use in connection with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Grand Court**") on July 15, 2022 (the "**Appraisal Proceeding**"). In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their shares in 51job, Inc. ("**51job**" or the "**Company**"), a Cayman Islands company that was delisted from the NASDAQ Global Select Market and taken private on May 6, 2022. Petitioners' shares were forcibly

cancelled through a merger (the "**Merger**") orchestrated by its majority shareholder, company insiders and affiliates, and private equity funds (the "**Participants**"), the purpose of which was to enable the Participants to acquire 100% control of the Company. Respondents served as the independent financial advisors to the special committee of the board of the Company tasked with evaluating and recommending the Merger to minority unaffiliated shareholders.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before a foreign tribunal. Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). Petitioners' Application meets the statutory requirements of Section 1782: (i) Respondents "reside" or are "found" in this District because they are incorporated in Delaware; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, as parties to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioners' Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("**Intel**").

*First*, Petitioners seek discovery from two "nonparticipant[s] in the matter arising abroad." *Id.* Respondents are not parties to the Appraisal Proceeding or otherwise subject to the jurisdiction of the Grand Court. As recognized in *Intel*, "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent §1782(a) aid." *Id.*

*Second*, "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all support granting Petitioners' Application. *Id.* There is no indication, let alone "authoritative proof," suggesting that the Grand Court might be unreceptive to Section 1782 assistance. To the contrary, several U.S. courts, including a court in this District, have granted Section 1782 applications for discovery in aid of appraisal proceedings in the Cayman Islands, and the Grand Court is receptive to discovery obtained through Section 1782.

*Third,* the Application is not "conceal[ing] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Id.* at 265. The requested discovery does not implicate any privilege or protection that would make it improper under Cayman law.

*Fourth*, the requested discovery is not "unduly intrusive or burdensome." *Id.* The Subpoenas are tailored to seek evidence addressing the fair value of Petitioners' shares in the Company and the process that the Special Committee (defined below) and the Company undertook to negotiate, approve, and recommend the Merger.

*Finally*, this Court should exercise its discretion to order production of any responsive discovery that Respondents have in their possession, custody, or control, regardless of the physical location of that discovery. Section 1782 is extraterritorial in reach, and courts commonly order discovery of documents located abroad.

## BACKGROUND

### A. Parties to the Foreign Proceeding and the Merger.

Petitioners Oasis Focus Fund LP and Quadre Investments, L.P. are members of the group of dissenting shareholders who formerly held shares in the Company and are parties to the

Appraisal Proceeding.  *See* Declaration of Rocco Cecere in Support of Petitioners' Application ("**Cecere Decl.**") ¶ 6.

The Company was founded in 1998 and is headquartered in Shanghai, the People's Republic of China ("**PRC**").  Cecere Decl. ¶ 7.  The Company provides integrated human resources services in the PRC.  *Id*.  Before the Merger, the Company's stock was publicly traded on the NASDAQ Global Select Market (through American Depository Shares ("**ADS**")) under the JOBS symbol.  *Id*.

The Merger process first began in September 2020, during the peak of the COVID-19 pandemic, when the Company approached Rocketeer Management, a "strategic consultant, to explore potential strategic transactions, including possible minority or control transactions, mergers and acquisitions, debt financings or equity financings."  Cecere Decl. Ex. 1 ("**Proxy Statement**") at 28.  On September 21, 2020, the Company announced the formation of the special committee (the "**Special Committee**"), comprised of Li-Lang Chen and Eric He, two purportedly independent directors, to consider and negotiate proposed transactions and strategic alternatives. *Id.* at 29.  This process culminated in the Company executing a merger agreement (the "**Original Merger Agreement**") on June 21, 2021.  *Id.* at 37.

The Original Merger Agreement was a non-arms' length transaction to take the Company private by a buyer consortium (the "**Buyer Consortium**"), which included Mr. Rick Yan (the Company's director, chief executive officer, and president), three of his associated investment vehicles, and several other funds—who had committed to "work exclusively with each other."  *Id.* at i–ii, 33.  Moreover, the "Management Continuing Shareholders"—including Mr. Yan and his three investment vehicles, along with other Company management and related investment

vehicles—"expressed unwillingness" to "sell their shares in any other transaction involving the Company," and entered into a support agreement to vote in favor of the Merger. *Id.* at 11, 43. The Original Merger Agreement also did not require approval by a majority of the minority shareholders ("**MoM Protection**"), a common corporate law device used to protect minority shareholders from controlling shareholders. *Id.* at 35.

The Original Merger Agreement provided for consideration of US$79.05 per share and per ADS ("**Original Merger Price**"). *Id.* at 36. This undervalued the Company's shares, which—as late as January 16, 2020—traded at US$91.72, and was called "opportunistic" by some market commentators. Cecere Decl. ¶ 10; Cecere Decl. Ex. 7 at 3. Respondents were engaged as the Special Committee's financial advisors in connection with the Original Merger Agreement. In particular, Duff & Phelps provided a fairness opinion in respect of the Original Merger Agreement, which "estimated the value of each ADS to range from US$73.18 to US$86.94." Proxy Statement at 36. DPS provided "certain financial and market related advice and assistance as requested by the Special Committee." *Id.* at 62, C-5.

Following the execution of the Original Merger Agreement, the Company filed a Schedule 13E-3 form and draft proxy statement with the Securities and Exchange Commission on July 6, 2021. Cecere Decl. Ex. 2. However, after that date, the Company went silent for four months, ignoring repeated attempts at correspondence by concerned shareholders. Cecere Decl. ¶ 15. Finally, on November 8, 2021, the Company issued a vaguely worded announcement that "certain members of the buyer consortium" had "been in consultation with Chinese regulators on recent regulatory changes in China that may be applicable to the Company and the [Original Merger]." Cecere Decl. Ex. 3. It is now clear from the Company's subsequent filings that the "consultations"

with the PRC regulators were initiated in early August 2021 by members of the Buyer Consortium after discussions with Mr. Yan and the Company. There is a question as to why the Buyer Consortium approached certain PRC regulators (who are not specified in the Proxy Statement or any other materials) in circumstances where that contact ultimately lead to renegotiating the Original Merger Agreement on terms beneficial to the Buyer Consortium at the expense of the unaffiliated minority shareholders. Cecere Decl. ¶ 15.

On January 12, 2022, the Buyer Consortium submitted to the Special Committee a proposal letter that changed the terms of the Original Merger Agreement, offering a dramatically reduced consideration of US$57.25 per share—or a *28% decrease* from the Original Merger Price. *Id.* ¶ 16. The Special Committee was under *no* obligation to re-negotiate the binding Original Merger Agreement (and should not have done so). *Id.* ¶ 17. Nonetheless, the Special Committee re-negotiated with the Buyer Consortium, eventually agreeing to "accept" a renegotiated price of US$61 per share (the "**Revised Merger Price**")—a 23% decrease from the Original Merger Price and the bare amount necessary for Duff & Phelps to receive its US$500,000 capped incentive fee. *Id.*

On March 1, 2022, the Company executed an amendment ("**Amendment No. 1 to the Original Merger Agreement**"), which, amongst other things, reflected the Revised Merger Price. Cecere Decl. ¶ 18. Amendment No. 1 to the Original Merger Agreement also did not require MoM Protection. *Id.* ¶ 19. In addition, the "go-shop" provision—a clause commonly included in a merger agreement, which compels a target company to seek competing bids—was shortened to two weeks. Proxy Statement at 14; Cecere Decl. ¶ 20. Respondents continued to act as the financial advisors to the Special Committee and, again, Duff & Phelps provided a fairness opinion

in respect of Amendment No. 1 to the Original Merger Agreement, which "only addressed the fairness from a financial point of view" of the Revised Merger Price. Proxy Statement at 13. DPS provided services in connection with the go-shop exercise. Proxy Statement at 62.

On March 29, 2022, the Company issued a proxy statement (the "**Proxy Statement**"). *Id.* The Proxy Statement explained that "[t]he purpose of the Merger is to enable the Participants to acquire 100% control of the Company." *Id.* at 9. Nonetheless, the Special Committee recommended that minority shareholders vote in favor of the Merger, even at the Revised Merger Price. *Id.* ¶ viii-ix, 94. An Extraordinary General Meeting of the Company's shareholders was held on April 27, 2022, to vote on the Merger. Given that the so-called "Continuing Shareholders" and their affiliates—being certain member of the Buyer Consortium, other members of the Company's management, and the Company's largest shareholder beneficially held 56.2% of the Company's issued and outstanding shares at the time of the Proxy Statement and executed a support agreement to vote in favor of the Merger, the Merger was unsurprisingly approved. Cecere Decl. ¶ 21 and Proxy Statement at 11-12. On May 6, 2022, the Merger completed and the Company was delisted from the NASDAQ Global Select Market. Cecere Decl. ¶ 22.

## B. The Appraisal Proceeding.

On July 15, 2022, both the Company and Petitioners (along with other dissenting shareholders) initiated proceedings before the Grand Court under Section 238 of the Companies Act of the Cayman Islands ("**Section 238**"), asking the Grand Court to determine the fair value of their former shares in the Company. The parties have agreed that these proceedings will be consolidated and heard together as the Appraisal Proceeding. Cecere Decl. ¶ 26. Petitioners and the other dissenting shareholders will have the opportunity to present (among other things)

7

documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Grand Court. In determining the fair value of the dissenting shareholders' shares, the Grand Court will examine both the valuation of the Company and the fairness of the process that led to the Special Committee's and the Company's approval of the Merger. *See* Declaration of Justice Ingrid Mangatal ("**Mangatal Decl**.") ¶¶ 20–23.

### C.  Respondents and the Discovery Sought.

Respondents are Duff & Phelps and DPS. Respondents served as independent financial advisors to the Special Committee. Duff & Phelps produced at least two fairness opinions regarding the Merger. Proxy Statement at 36, 62, C-5. The Proxy Statement details numerous phone calls, meetings, and other exchanges between Duff & Phelps and the Special Committee on the one hand, and the Company and the Buyer Consortium on the other. *See id.* at 28–42. DPS provided services in connection with the go-shop exercise as well as "certain financial and market related advice and assistance as requested by the Special Committee." *Id.* at 62, C-5.

Petitioners' Application seeks discovery from Respondents on issues relevant to the Appraisal Proceeding, including: (i) the fairness of the Original Merger Price and the Revised Merger Price, the rationale for renegotiating and accepting the Revised Merger Price, and the process leading to the Original Merger Price's and Revised Merger Price's approval by the Special Committee; (ii) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared in support of Respondents' fairness opinions and/or any advice provided by Respondents; and (iii) any alternative bids to acquire the Company. The Grand Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained within the jurisdiction in which it originates and not otherwise subject to an

exclusionary rule of evidence. Mangatal Decl. ¶ 33. This requested discovery will accordingly significantly assist the Grand Court in evaluating the Merger and determining the fair value of Petitioners' former shares in the Company. *Id.* ¶ 40.

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits United States district courts to grant discovery for use in a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). A Section 1782 application must satisfy three "modest prima facie elements": (1) the discovery is sought from a person that resides or is found within the district; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *Bayer*, 146 F.3d at 193, 195.

If the statutory requirements are met, the court considers four discretionary "*Intel*" factors: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. In exercising its discretion, the Court should consider Section 1782(a)'s "'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Application of Biomet Orthopaedics Switzerland GMBH*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252).

## I. THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782.

### A. Respondents are "Found In" this District.

Section 1782's requirement that an entity "reside or be found" in a district is satisfied when an entity is incorporated in the district. *Via Vadis Controlling GmbH v. Skype, Inc.*, 2013 WL 646236, at *1–2 (D. Del. Feb. 21, 2013) ("Skype is a Delaware corporation, and thus resides in the District of Delaware for the purposes of § 1782."); *In re Liverpool Ltd. P'ship*, 2021 WL 3793901, at *1 (D. Del. Aug. 26, 2021) ("BAC is a Delaware corporation and therefore it resides and is found in this District"). Both Respondents are incorporated in Delaware and thus are "found" in this District for the purposes of Section 1782. Declaration of Duane L. Loft ("**Loft Decl.**"), Exs. 3 & 4.

### B. The Discovery Sought is "For Use" in a Foreign Proceeding.

A Section 1782 application establishes the "for use" requirement by showing that the requested discovery may be submitted to and relied on by the foreign tribunal. *See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015). To satisfy this element, Petitioners must merely show that it has the procedural right to submit the requested documents to the foreign tribunal. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). Petitioners are not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *In re Chevron Corp.*, 633 F.3d 153, 161 (3d Cir. 2011). Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *Accent Delight*, 869 F.3d at 131 (emphasis in original).

The Grand Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained within the jurisdiction in which it originates and not otherwise subject to an exclusionary rule of evidence. *See* Mangatal Decl. ¶ 33. In appraisal proceedings, the Cayman Islands Court of Appeal ("**CICA**") has emphasized the need to consider all facts and matters that may have a bearing on the determination of fair value. *Id.* ¶ 20 (citing Mangatal Decl. Ex. B, *Qihoo 360 Technology Co., Ltd* (unreported, October 9, 2017, CICA at 598) ("The sole task of the Court is to determine the fair value of the dissenters' shares. To do that, it needs full information.")). The Grand Court will consider the requested discovery here, given its relevance in determining the fair value of Petitioners' former shareholdings in the Company. *Id.* ¶ 40. Finally, the requested discovery is intended for use in the Appraisal Proceeding, which was filed on July 15, 2022. Cecere Decl. ¶ 26. The requested discovery is therefore plainly "for use" in the Appraisal Proceeding, and Petitioners have thus satisfied Section 1782's second statutory requirement. *See In re Appl. of Temporary Servs. Ins. Ltd.*, 2009 WL 2843258, at *2 (W.D.N.Y Aug. 28, 2009) (finding discovery sought for use in Cayman proceeding satisfied this prong).

## C. Petitioners are "Interested Persons."

"Litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *see also Kulzer v. Esschem, Inc.*, 390 F. App'x. 88, 91 (3d Cir. 2010) ("An interested person includes a party to the foreign litigation, whether directly or indirectly." (internal quotes omitted)). Petitioners are parties to the Appraisal Proceeding and thus are "interested persons" under Section 1782. Cecere Decl. ¶ 6. All of Section 1782's statutory elements are satisfied here.

### D. Section 1782 Applies Extraterritorially.

That discovery may be located abroad does not change the analysis under the statutory requirements. *See, e.g.*, *In re del Valle Ruiz*, 342 F. Supp. 3d 448, 459 (S.D.N.Y. 2018), *aff'd* 939 F.3d 520 (2d Cir. 2019) (exercising discretion to permit discovery of documents located abroad); *In re Iraq Telecom Ltd.*, 2021 WL 5177603, at *3 (E.D. Pa. Nov. 5, 2021) ("it is the target of the discovery—here, Dechert—that governs for purposes of assessing personal jurisdiction under § 1782"). To the extent Respondents may assert that the relevant documents are located outside the United States, those documents are nonetheless in the possession, custody, and control of Respondents and thus are subject to discovery under Section 1782. *Liverpool*, 2021 WL 3793901 at *1 ("To be clear, and so there is no doubt about how to interpret this Memorandum Order, because BAC is a Delaware corporation and the parent of BofA Securities [a Japanese subsidiary], documents that 'reside' with BofA Securities are nonetheless in BAC's possession, custody, and control.").

## II. THE DISCRETIONARY *INTEL* FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY.

### A. *Intel* I: Respondents are Nonparticipants in the Appraisal Proceeding.

The first *Intel* factor weighs in favor of discovery when a respondent "is not a participant in the foreign litigation" and thus is "outside the foreign tribunal's jurisdictional reach." *In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016); *Liverpool*, 2021 WL 3793901, at *2 ("neither BAC nor BofA Securities is a participant in the Japanese action and therefore the first Intel factor favors compelling the discovery sought by Liverpool").

Neither Respondent is party to the Appraisal Proceeding. Cecere Decl. ¶ 29. Moreover, Cayman law does not provide Petitioners any applicable or efficient means by which they can

compel the discovery sought in this Application. Mangatal Decl. ¶¶ 25–30. As non-parties, Respondents are not subject to party discovery in the Appraisal Proceeding. *Id.* Further, because Respondents are not domiciled in the Cayman Islands, the Grand Court will not have jurisdiction to compel discovery from them. *Id; see also In re Request for Jud. Assistance from 13th Fam. Ct. of Istanbul, Turkey in Matter of Canbilek*, 2022 WL 721912, at *3 (D.N.J. Feb. 18, 2022) ("Because Yesim Ilkim is a non-party located in New Jersey, he may be 'outside the foreign tribunal's jurisdictional reach' absent assistance pursuant to § 1782(a)."). Petitioners thus cannot obtain discovery from Respondents through the Appraisal Proceeding, even though evidence from Respondents is crucial to the fair resolution of the dispute. Accordingly, the first *Intel* factor weighs in favor of granting the Application. *See, e.g. Biomet*, 742 F. App'x at 696 (district court erred in quashing 1782 application where petitioner could not obtain the discovery it needed under German procedure).

### B. *Intel* II: The Grand Court Will Be Receptive to the Requested Discovery.

The second *Intel* factor requires courts to consider whether the nature, attitude, and procedures of the foreign tribunal indicate that it is receptive to Section 1782 assistance. *In re Application of Gilead Pharmasset LLC*, 2015 WL 1903957, at *3 (D. Del. Apr. 14, 2015). There is a strong presumption that foreign tribunals will be receptive to discovery obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the discovery obtained through Section 1782. *Id*. at *2 ("The party opposing the discovery bears the burden of persuading the Court that the foreign tribunals would not consider the discovery sought by the § 1782 order."). Moreover, "the general view is that the second Intel factor weighs against discovery only where there is 'authoritative proof' that the foreign court

would reject the evidence." *In re O'Keeffe*, 2015 WL 540238, at *4 (D.N.J. Feb. 10, 2015), *aff'd sub nom. In re The Application of Kate O'Keeffe for Assistance Before a For. Trib.*, 2015 WL 5039723 (D.N.J. Aug. 26, 2015), *aff'd sub nom. In re O'Keeffe,* 646 F. Appx. 263

The Grand Court will consider any evidence that has a bearing on determining the fair value of the Company's shares. *See* Mangatal Decl. ¶ 20. Indeed, the CICA has underscored that third-party materials are relevant in Section 238 proceedings, reasoning:

> [I]f third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company….After all, the question of fair value is closely related to the question of what a willing buyer and a willing seller would exchange for the shares of the Company (or for the Company as a whole): and that question is closely related to valuations conducted within the market generally.

*Id*. ¶ 24 (citing Mangatal Ex. A (*Re Qunar Cayman Islands Limited* (2018 1 CILR 199) at paragraph 60)). This includes discovery obtained under Section 1782, including pre-trial deposition testimony, which the CICA has explicitly held "is a right conferred by U.S. law—it is not a right conferred by, or *to be withheld under Cayman law*." *Id.* ¶ 32 (citing Mangatal Decl. Ex. C (*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009 CILR 553] at 575)) (emphasis added). Accordingly, the Grand Court has made procedural orders in Cayman Islands appraisal proceedings that acknowledge and accommodate discovery obtained through Section 1782. Cecere Decl. ¶ 34. Further, multiple U.S. courts have recognized that Cayman Islands' courts are receptive to evidence obtained through Section 1782,[1] including a court in this

---

[1] *See also In re Kuwait Ports Auth.,* 2021 WL 5909999, at *10 (S.D.N.Y. Dec. 13, 2021) ("The record contains no clear and express directive under Cayman law or policy that would demonstrate a lack of receptivity to judicial assistance from federal courts in the United States."); *In re Hopkins*, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (granting application where "there is no indication that the Cayman Islands court would not be receptive to the information sought from [respondent]."); *In re Dickson*, 2020 WL 550271, at *2 (S.D.N.Y. Feb. 4, 2020); *In re Platinum*

District, which granted discovery for use in a different Cayman Islands appraisal proceeding. *See*

*In re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29,

2021) (Loft Decl. Ex. 5).[2]

## C. *Intel* III: Petitioners are Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to

circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

States." *Intel*, 542 U.S. at 265. In *Intel*, the Supreme Court expressly rejected the notion that

Section 1782 requires that the evidence be discoverable in the foreign proceeding itself. *Id.* at 261

("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal

practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United

States federal courts."); *see also In re O'Keeffe*, 2015 WL 540238, at *6. This factor applies only

in the extreme circumstances where a Section 1782 application would circumvent "proof-gathering

restrictions," that is, "rules akin to privileges that *prohibit* the acquisition or use of certain

---

*Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("In support of this assertion, the Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman Islands' courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding Cayman Islands' court "is open to receiving § 1782 discovery"); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman proceedings).

[2] Two other district courts also recently granted Section 1782 applications for both document discovery and a deposition for use in different Cayman appraisal proceedings. *See In re Application of Athos Asia Event Driver Master Fund*, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBD, ECF No. 8 (S.D.N.Y. Mar. 3, 2021) (same) (Loft Decl. Ex. 6).

materials." *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) (emphasis in original). No such circumstance is present here. Moreover, "there is no requirement that a foreign litigant first attempt to obtain discovery through the foreign forum before resorting to Section 1782." *Id.*; *see also Kulzer*, 390 F. App'x at 92 ("[T]he [1782] statute does not reference a requirement of discoverability under the foreign country's laws."). Instead, the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner gathering the specific information sought. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the *admissibility* of evidence in the foreign proceeding.") (emphasis in original).

The requested discovery does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands. To the contrary, the Grand Court is receptive to evidence obtained under Section 1782, *supra* II.B. Furthermore, there is no Cayman Islands law prohibiting a party from seeking Section 1782 discovery, requiring it to obtain permission from the Grand Court before seeking Section 1782 discovery, or that declaring that evidence obtained via Section 1782 is inadmissible. Mangatal Decl. ¶ 33. Moreover, the CICA has expressly held that "prima facie a party who can invoke the jurisdiction of the US District Court under § 1782 *may choose to do so*." Mangatal Decl. ¶ 32 (citing Ex. C (*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009 CILR 553] at 574) (emphasis added)).

**D.    *Intel* IV: The Subpoenas are Not Unduly Burdensome.**

The requested discovery is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal

Rules of Civil Procedure. *See Bayer*, 146 F.3d at 195 ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").

1. The Subpoenas are Properly Limited in Scope.

*First*, the Subpoenas are tailored to seek only documents and information directly relevant to critical issues in the Appraisal Proceeding. Mangatal Decl. ¶ 40. In a recent Section 1782 decision, Judge Connolly considered a Section 1782 application brought by a dissenting shareholder involved in a Japanese appraisal proceeding. *Liverpool*, 2021 WL 3793901, at *3. The petitioner sought discovery from Bank of America's Japanese subsidiary that acted as the financial advisor to the Special Committee in the transaction at issue. *Id.* at *2. Bank of America argued that the requests were unduly burdensome because "Petitioner broadly lists every category of conceivable relevance to the LINE transaction—including: *all* documents and communications exchanged with any member of the board, the Special Committee, the Company, or their advisors relating to the transaction or any alternatives contemplated by the Company; *all* documents and communications exchanged with the Buyer Group concerning the Company; and *all* documents exchanged with any financial advisor of the Buyer Group." *Id.* at *2 (emphasis in original).

In ruling on burden, Judge Connolly "reject[ed] BAC's complaints that Liverpool made no attempt to narrowly tailor its requests and that the subpoena broadly listed 'every category of conceivable relevance to the LINE transaction.' The scope of the categories of subject matter sought by the subpoena is reasonable given the nature of and BofA Securities' role in the transactions at issue in the appraisal action." *Id.* at *3. Like in *Liverpool*, the issues to be decided in the Appraisal Proceeding are necessarily broad. Given Respondents' "role in the transactions

at issue in the appraisal action," *id.*, the scope of the requests, which are very similar to those in *Liverpool*, *id.*, are reasonable.[3]

*Second*, the discovery requests are also temporally limited to a two-year period of July 1, 2020—July 30, 2022—being approximately two months prior to the Company engaging a strategic consultant to explore potential transactions, to two months after the Merger's closure.[4]

*Third*, granting the Application will not preclude Respondents from bringing a motion to quash or modify the discovery sought.[5]  If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir.

---

[3] That some of the discovery may be available in the Appraisal Proceeding does not weigh against granting the application. While a court may consider duplicative discovery as a discretionary matter, courts in Section 1782 cases routinely grant discovery from third parties when some of the information may be available from the party to the underlying proceeding. *See, e.g.*, *Kuwait Ports Auth.*, 2021 WL 5909999, at *9 (holding that "to the extent there is some overlap in the information sought here and in the [Foreign] Proceeding . . . the proposed subpoena would likely provide corroborating information that would bear on those proceedings."), *In re Aso*, 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019) ("[T]he subpoenaed parties are uniquely positioned to provide corroborating information."); *AbbVie Inc., et al. v. Boehringer Ingelheim Int'l GmbH*, 2018 WL 2337133, at *2 (D. Del. May 23, 2018) (denying a protective order where there was "considerable overlap, although not exact congruence" between defendant's party and third party RFPs to "serve as a check on whether [Plaintiff] has produced all relevant information").

[4] *See In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (holding that a Section 1782 request, like any other discovery request, is "reasonably calculated to lead to relevant matter if there is any possibility that the information sought may be relevant to the subject matter of the action").

[5] *In re Letter of Request from Supreme Ct. of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) ("[S]uch *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash").

1995).  And Petitioners are willing to meet and confer with Respondents to address any burden concerns.

### 2.  A Rule 30(b)(6) Deposition is Appropriate Here.

District courts are typically "generous" in granting Rule 30(b)(6) depositions in Section 1782 cases, even in cases with "tight schedule[s]" and other potential difficulties. *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *13 (S.D.N.Y. Feb. 18, 2016) (permitting 30(b)(6) deposition despite "tight schedule" because it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance they would have to produce documents and prepare witnesses on a short timetable").[6]  Given the role that Respondents played in this matter, a Rule 30(b)(6) deposition of a corporate representative is relevant to the determination of fair value of the dissenting shareholders former shareholdings in the Company, and will significantly aid the Grand Court.  *See FourWorld*, No. 21-mc-00283-RGS, ECF No. 6 (Loft Decl. Ex. 5) (granting a Rule 30(b)(6) deposition from Warburg Pincus Asia for use in a Cayman Islands appraisal proceeding).

If the Rule 30(b)(6) witnesses for Respondents do not reside, are not employed, or do not regularly conduct business within 100 miles of the place of compliance, Petitioners are willing to meet and confer on a location convenient for the parties, including by remote means.  Fed. R. Civ. P. 45(c)(1).  *See, e.g.*, *Walsh v. Tara Constr., Inc.*, 2022 WL 1913340, at *2 (D. Mass. June 3, 2022) ("The Court thus concludes that it may issue a subpoena under Rule 45 . . . for a witness to

---

[6] *See also In re Mother's Milk, Inc.*, 2020 WL 2514315, at *5 (S.D.N.Y. May 15, 2020) (permitting 30(b)(6) deposition because it would "provide helpful evidence to the [foreign] court in moving the case forward"); *In re Accent Delight Int'l Ltd.*, 2018 WL 2849724 (S.D.N.Y. June 11, 2018) (same).

provide remote testimony from any place within 100 miles of her residence, place of employment, or place where she regularly conducts business. This interpretation, which derives naturally from the plain language of Rules 43 and 45 and their accompanying Advisory Committee notes, is the prevailing position among district courts both within and outside this circuit.") (collecting cases); *United States v. $110,000 in U.S. Currency*, 2021 WL 2376019, at *3 (N.D. Ill. June 10, 2021) (same); *Int'l Seaway Trading Corp. v. Target Corp.*, 2021 WL 672990, at *5 (D. Minn. Feb. 22, 2021) ("the 100-mile limitation now found in Rule 45(c) has to do with the place of *compliance*; not the location of the court from which the subpoena issued") (emphasis in original), *appeal dismissed*, 2021 WL 5365242 (8th Cir. June 30, 2021).

## CONCLUSION

For the foregoing reasons, Petitioners respectfully requests that the Court grant its petition for an order pursuant to 28 U.S.C. § 1782.

Dated: December 23, 2022                    Respectfully submitted,


                                            By: */s/ Jamie L. Brown*
                                            Jamie L. Brown
                                            HEYMAN ENERIO GATTUSO & HIRZEL
                                            LLP
                                            300 Delaware Avenue, Suite 200
                                            Wilmington, DE 19801
                                            Telephone: (302) 472-7300
                                            jbrown@hegh.law


                                            *Of Counsel*:

                                            Duane L. Loft*
                                            Melissa J. Kelley*
                                            Brianna Hills Simopoulos*
                                            PALLAS PARTNERS (US) LLP
                                            75 Rockefeller Plaza
                                            New York, NY 10019
                                            Telephone: (212) 970-2300
                                            duane.loft@pallasllp.com
                                            melissa.kelley@pallasllp.com
                                            brianna.simopoulos@pallasllp.com

                                            *Attorneys for Petitioners*

                                            **Pro hac vice* applications forthcoming