# EXHIBIT 2

# UNITED STATES DISTRICT COURT
for the

District of Delaware

| | |
|---|---|
| In re Application of Oasis Focus Fund LP and Quadre Investments, L.P. <br> *Plaintiff* <br> v. <br> <br> *Defendant* | ) <br> ) <br> ) Civil Action No. <br> ) <br> ) <br> ) |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: Kroll Securities, LLC c/o Corporate Creations Network Inc., 3411 Silverside Road Tatnall Building Ste 104, Wilmington DE 19810

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Schedule B hereto.

| Place: | HEYMAN ENERIO GATTUSO & HIRZEL LLP <br> 300 Delaware Avenue, Suite 200 <br> Wilmington, DE 19801 | Date and Time: <br> 02/28/2023 9:00 am |
|---|---|---|

The deposition will be recorded by this method: Stenography and videography

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Within 30 days from service of this Subpoena, you shall produce to the undersigned counsel, all documents and things that are responsive to the requests set forth in Schedule A hereto in accordance with the definitions and instructions therein.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: December 23, 2022

| | |
|---|---|
| *CLERK OF COURT* | OR |
| _____ | /s/ Duane L. Loft |
| Signature of Clerk or Deputy Clerk | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Oasis Focus Fund LP and Quadre Investments, L.P. , who issues or requests this subpoena, are:

Duane L. Loft, Pallas Partners (US) LLP, 75 Rockefeller Plaza, New York, New York, 10019, 212-970-2300, duane.loft@pallasllp.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

a. "Alternative Transactions" means any potential acquisition of the Company or other potential alternatives to the Merger.

b. "Amendment No. 1 to the Original Merger Agreement" means Amendment No. 1 to the Original Merger Agreement, dated as of March 1, 2022, between the Company and Merger Sub.

c. "Board" means the Company's Board of Directors.

d. "Buyer Consortium" means the following entities, groups, or group members, Including each entity's, group's, or group member's parents, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each entity's, group's, or group member's employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on each entity's, group's, or group member's behalf or subject to its control, and Including any other entities in which each entity, group, or group member has or had an ownership interest.

    i. Merger Sub;
    ii. the DCP Filing Persons;
    iii. the Ocean Link Filing Persons; and
    iv. the Founder Filing Persons;

e. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

f. "Company" or "51job" means 51job, Inc., and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators,

representatives, and any other person or entity acting on its behalf or subject to its control, and Including any other entities in which the Company has or had an ownership interest.

  g. "Concerning" means relating to, referring to, describing, evidencing or constituting.

  h. "Continuing Shareholders" means the Management Continuing Shareholders and Recruit.

  i. "DCP Filing Persons" means DCP Capital Partners II, L.P. and Oriental Poppy Limited, and each entity's parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each entity's employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on either entity's behalf or subject to either entity's control, and Including any other entities in which each entity has or had an ownership interest.

  j. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term.

  k. "Fairness Opinion" means any written opinion concerning the Merger produced by You, and/or any other financial advisor hired by the Company, the Special Committee, Recruit, Rocketeer Management, or the Buyer Consortium, Management Continuing Shareholders, Continuing Shareholders, Participants, or any member of the aforementioned, Including those dated June 21, 2021 (as discussed at page 36 of the Proxy Agreement), and March 1, 2022 (as reflected at Annex C to the Proxy Statement).

  l. "Founder Filing Persons" means Mr. Rick Yan, RY Holdings Inc., RY Elevate Inc., and 51 Elevate Limited, and (as applicable) each entity's parents, members, shareholders, partners,

owners, subsidiaries, affiliates, predecessors, successors, assigns, and each entity's or person's employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on each entity's or person's behalf or subject each entity's or person's control, and Including any other entities in which each entity or person has or had an ownership interest.

  m. "Including" means including, without limitation, the specific matter, Documents, or electronically stored information described.

  n. "Kroll, LLC" means Kroll, LLC (f/k/a Duff & Phelps, LLC) and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and Including any other entities in which it has or had an ownership interest.

  o. "Lenders" means Shanghai Pudong Development Bank Co., Ltd and China Merchant Bank Co., Ltd., and each entity's parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of their employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on each entity's behalf or subject to each entity's control, and Including any other entities in which each entity has an ownership interest:

  p. "LLW Holding" means LLW Holding Ltd. and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and Including any other entities in which it has or had an ownership interest.

3

q. "Management Continuing Shareholders" means Mr. Rick Yan, RY Holdings Inc., RY Elevate Inc., Ms. Kathleen Chien, and LLW Holding.

r. "Merger" means the going-private transaction contemplated within the Merger Agreement and referred to in the Proxy Statement. For the avoidance of doubt included in the Merger is the merger contemplated by both the Original Merger Agreement and Amendment No 1 to the Original Merger Agreement.

s. "Merger Agreement" means the Original Merger Agreement and Amendment No. 1 to the Original Merger Agreement.

t. "Merger Sub" means Garnet Faith Limited and its parents, subsidiaries, affiliates, and any entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

u. "Ocean Link Filing Persons" means Mr. Nanyan Zheng, Mr. Tianyi Jiang, Alliance Ascend GP Limited, Alliance Ascend L.P., Ocean Link Partners II GP Limited, Ocean Link Partners II GP, L.P., Ocean Link Partners II, L.P., Ocean Ascend Holding Limited, and Ocean Ascend Limited, and (as applicable) each entity's parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each entity's or person's employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on each entity's or person's behalf or subject to its control, and Including any other entities in which each person or entity has or had an ownership interest.

v. "Original Merger Agreement" means the agreement and plan of merger dated as of June 21, 2021, between the Company and Merger Sub.

w. "Participants" means the Buyer Consortium, Recruit, Ms. Kathleen Chien, and LLW Holding.

x. "Proxy Statement" means the Company's Proxy Statement, Form DEF 14A, dated March 29, 2022, available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://ir.51job.com/ir/doc/2022/2022EGMProxyMaterials20220329.pdf.

y. "Recruit" means Recruit Holdings Co. Ltd., and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and Including any other entities in which it has or had an ownership interest.

z. "Representatives" means any advisors, consultants, attorneys, counsel, agents, service providers, bankers, financiers, accountants, together with their affiliates.

aa. "Rocketeer Management" means Rocketeer Management and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and Including any other entities in which it has or had an ownership interest.

bb. "Special Committee" means the committee of the Board comprised solely of the allegedly independent directors of the Company that was tasked with, *inter alia*, evaluating the fairness of the Merger, Including the committee's divisions or business segments, predecessors, successors, assigns, parents, subsidiaries, affiliates, members, partners, shareholders, owners,

officers, directors, employees, and agents and any person acting or purporting to act on their respective behalf.

cc. "You" "Your" and "Yours" means Kroll Securities, LLC (f/k/a Duff & Phelps Securities, LLC) and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and Including any other entities in which it has or had an ownership interest.

## INSTRUCTIONS

1. These Document demands are intended to and do cover all Documents in Your possession, custody, or control, Including those belonging to subsidiaries, divisions, or affiliates, or any of Your directors, officers, managing agents, employees, attorneys, accountants, or other representatives. These Document demands also are intended to and do cover any and all Documents You are authorized or have the practical ability to retrieve, including those stored on devices of any individual or entity within Your possession, custody, or control.

2. Each request for a Document contemplates production of the Document or electronically stored information in its entirety, without abbreviation or expurgation.

3. Documents or electronically stored information provided shall be complete and, unless privileged, unredacted, submitted as found (*e.g.*, Documents that in their original condition were stapled, clipped or otherwise fastened shall be produced in such form). To the extent any responsive Document is attached to another Document through manual or electronic (*e.g.*, e-mail) means, both the responsive Document and any attachment(s) should be produced. To the extent only a portion of a Document or electronically stored information is privileged, the non-privileged portion should be produced and any redactions should be clearly marked.

4. Electronically stored information ("ESI") should be produced in the following format: Single Page TIFFs, Document level text files (text-searchable), Native Files, .DAT with standard Concordance delimiters (should contain the path to native files and text files), .OPT image load file (should contain the page count and volume path). Such ESI includes, but is not limited to, electronic mail, SMS messages and other forms of mobile text or messaging formats (including Bloomberg messages, Instant Bloomberg chats, WeChat messages, Signal messages, WeCom messages, QQ messages, and WhatsApp messages), calendar entries, Documents created with word processing software such as Microsoft Word, pictures, audio and video recordings, and Documents in Portable Document Format ("PDF").

5. With respect to any Documents that are withheld, whether under claim of privilege or otherwise, provide all information regarding the asserted privilege and the materials being withheld. Privileged attachments should be listed separately. Non-privileged attachments should be produced.

6. If no Documents exist that are responsive to a particular request, please so state in writing.

7. These demands require production of copies of all electronically stored information in native electronic format, Including production of all metadata.

8. No part of a request may be left unanswered, or Documents and things not produced, merely because an objection is interposed as to any other part of a request. Where an objection is made to any request, or subpart thereof, the objection must state with specificity all grounds and must state whether any responsive materials are being withheld on the basis of that objection. All objections to the production of Documents, information, or other things requested herein must be made in writing and delivered to counsel of record for the Petitioner.

9. This subpoena is deemed continuing in nature and You are obliged to produce responsive Documents and to supplement Your production whenever additional Documents are located or their existence ascertained.

10. Unless otherwise specified, each request pertains to the period of July 1, 2020 – July 30, 2022.

11. Pursuant to Federal Rule of Civil Procedure 30(b)(6), You are obligated to confer with the serving party regarding the depositions topics set forth below and to designate each person who will testify. The persons designated must testify about information known or reasonably available to You.

## DOCUMENT REQUESTS

1. All non-privileged Documents and Communications Concerning the Merger, Including:

   a. between (i) You and the Special Committee or any member of the Special Committee, (ii) other members of the Board or the Company, or (iii) any Representative of the Special Committee, the Board, or the Company;

   b. between You and the Buyer Consortium (or any member of the Buyer Consortium), or any Representative of the Buyer Consortium (or any Representative of any member of the Buyer Consortium);

   c. between You and the Management Continuing Shareholders (or any member of the Management Continuing Shareholders), the Continuing Shareholders (or any member of the Continuing Shareholders), the Participants (or any member of the Participants), Rocketeer Management, and/or any Representative of any of the foregoing;

   d. between You and Kroll, LLC;

    e. between You and any Lender, or any Representative of any Lender;

    f. Concerning the financing of the Merger, Including potential but unconsummated financing plans;

    g. Concerning the negotiation of the Merger Agreement, Including the Original Merger Agreement and Amendment No. 1 to the Original Merger Agreement, changes in the merger price, and the rationale for agreeing to Amendment No. 1 to the Original Merger Agreement;

    h. Concerning a potential pre-signing market check, a go-shop period, or any condition that the Merger be approved by a majority of the shares not held by the Buyer Consortium, the Management Continuing Shareholders, the Continuing Shareholders, Recruit, the Participants, or any of their affiliates;

    i. exchanged between You and any other potential purchasers of a controlling interest in the Company, or any Representative of any other potential purchasers of a controlling interest in the Company;

    j. Concerning Your evaluation of the Merger;

    k. discussion papers and memos for internal purposes Concerning any of the aforementioned Documents and Communications;

    l. all calendar entries for and notes of any meetings, conference calls, and telephone calls regarding the Merger, any Alternative Transaction, or other strategic transaction considered by the Special Committee or the Company.

2. All Documents and materials provided to You as the financial advisor to the Special Committee.

3. All Documents and Communications Concerning the valuation of the Company, Including:

   a. valuation reports, Fairness Opinions, solvency opinions, appraisals, analyses, reviews, discounted cash flow or comparable companies' analyses, or other Documents Concerning the value, market value, book value, or fair value of the Company, its stock, or any of the Company's assets or businesses;

   b. the Company's market price as a discount to its net asset value;

   c. any or all factors affecting the market value, book value, or fair value of the Company, Including all Documents and Communications evidencing or supporting the reasons for the change in Your analyses and recommendation between the Fairness Opinion dated June 21, 2021, and the Fairness Opinion dated March 1, 2022;

   d. forecasts of future performance of the Company, cash flow or other financial projections, the forecast profit and loss statement, the forecast balance sheet, the capital expenditure plan, the depreciation and amortization schedule, tax planning, and/or qualitative or quantitative discussions or analysis of any synergies (including the value or valuation of such synergies), whether on a stand-alone basis, as merged with Merger Sub under the Merger, under any Alternative Transaction, or under any other potential scenario;

   e. analyses of any precedent transaction, discounted stock price, historical stock trading, publicly traded companies, net asset value, or discounted cash flow analyses conducted in connection with any estimation of the value of the Company;

   f. all non-public transactions or other plans contemplated by any of the Company's business units as of the time of the Merger; or

   g. discussion papers and memos for internal purposes Concerning any of the aforementioned Documents and Communications.

 4. All Documents and Communications Concerning:

   a. Your services in connection with the go-shop exercise (as referenced at page 62 of the Proxy Statement); and

   b. any of the "certain financial and market related advice and assistance as requested by the Special Committee in connection with the" Merger provided by You (as referenced on page C-5 of the Proxy Statement).

 5. All Documents and Communications Concerning regulatory developments in the Peoples Republic of China ("PRC") and their purported or potential impact on the Merger, Including all Documents and Communications produced by, provided to, received from, or communicated with any PRC regulators and any Documents, Communications, or advice received by the Buyer Consortium (or any member thereof), the Management Continuing Shareholders (or any member thereof), the Continuing Shareholders (or any member thereof), the Participants (or any member thereof), Rocketeer Management, the Special Committee (or any member thereof), other members of the Board, the Company, or a Representative of any of the aforementioned.

 6. All Documents and Communications Concerning purported or perceived macroeconomic developments and market conditions resulting in the renegotiation of the merger price and Amendment No. 1 to the Original Merger Agreement, Including market conditions relating to PRC technology companies, the impact of COVID-19 on the Company, and any foreign exchange issues Including the potential depreciation of the Renminbi.

 7. All Documents and Communications Concerning the terms of Your engagement by the Special Committee, Including any indemnification agreements, pitch materials, fee

negotiations, and calculations of the maximum fee achievable under the incentive fee arrangement for the Fairness Opinion. For the avoidance of doubt this includes fee negotiations in relation to the Fairness Opinion dated June 21, 2021, and the Fairness Opinion dated March 1, 2022.

8. All Documents and Communications Concerning any objection by a shareholder to the Merger, Including any Documents responding to, discussing, analyzing, or commenting on the objections received from shareholders.

9. All non-privileged Documents and Communications Concerning a potential, pending, or ongoing appraisal proceeding in the Grand Court of the Cayman Islands, Including risk analysis, internal reports, and discussions of implications for public relations and business strategy.

10. To the extent not otherwise provided in response to these requests, all Documents and Communications produced as part of any other proceeding brought pursuant to 28 U.S.C. § 1782 Concerning the Merger, any Alternative Transactions to the Merger, or any other any strategic alternatives contemplated by the Company.

11. All non-privileged Documents and Communications Concerning the retention of Documents that may be responsive to this Subpoena, Including any policies Concerning document retention, document destruction, use of personal devices, and any Document or Communication Concerning retention of Documents in anticipation of litigation Concerning the Merger.

## SCHEDULE B

## DEPOSITION TOPICS

The Definitions in Schedule A are incorporated herein by reference. You shall testify Concerning:

1. All Documents produced by You in response to this subpoena and the method by which such Documents were identified, collected, and reviewed for production.

2. Your policies and procedures Concerning the retention of Documents, Including policies and procedures Concerning the use of personal devices and any Documents and Communications Concerning retention of Documents in anticipation of any litigation Concerning the Merger.

3. Your role and responsibilities as the financial advisor to the Special Committee Concerning the Merger and/or Alternative Transactions.

4. The advice and services You provided and analysis You conducted Concerning the Merger, Including Your services in connection with the go-shop exercise (as referenced at page 62 of the Proxy Statement) and any of the "certain financial and market related advice and assistance as requested by the Special Committee in connection with the" Merger provided by You (as referenced on page C-5 of the Proxy Statement).

5. Your knowledge, understanding of, and role in the negotiation of the Merger Agreement, Including the Original Merger Agreement and Amendment No. 1 to the Original Merger Agreement, Including changes in the merger price, the rationale for agreeing to Amendment No. 1 to the Original Merger Agreement, and the purported or perceived macroeconomic developments and market conditions resulting in the renegotiation of the merger price.

6. Your knowledge and understanding of regulatory developments in the PRC and their purported or potential impact on the Merger, Including Communications with any PRC regulator by You, the Buyer Consortium (or any member thereof), the Management Continuing Shareholders (or any member thereof), the Continuing Shareholders (or any member thereof), the Participants (or any member thereof), Rocketeer Management, the Special Committee (or any member thereof), other members of the Board, the Company, or a Representative of any of the aforementioned, and any advice received by any of the aforementioned Concerning these issues.

7. The process and analysis You undertook which culminated in the execution of any Fairness Opinion Concerning the Merger and reasons for the change in Your recommendation between the Fairness Opinion dated June 21, 2021, and the Fairness Opinion dated March 1, 2022.

8. Your analysis, review, and consideration of any financial projections or plans Concerning the Company, and/or plans Concerning the Company as a whole, or any business units of the Company.

9. Your review and consideration of any valuation reports, Fairness Opinions, or solvency opinions, appraisals, analyses, reviews or other Documents Concerning the value, market value, book value or fair value of the Company, its stock, and/or any of the Company's assets or businesses, Including any assumptions underlying all analyses, opinions, or projections Concerning the Company.

10. The terms of Your engagement and any fee negotiations.

11. Your Communications in connection with the Merger.