**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re Application of<br><br>Oasis Focus Fund LP and Quadre Investment, L.P.,<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 22- |

## DECLARATION OF INGRID MANGATAL IN SUPPORT OF THE *EX PARTE* APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

I, INGRID MANGATAL, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a former judge of the Grand Court of the Cayman Islands (the "**Grand Court**") and a retired judge of the Supreme Court of Judicature of Jamaica.

2. I was called to the Bar in Jamaica in 1987. I graduated from the University of the West Indies, Mona Campus, Jamaica, with Upper Second-Class Honors in 1985 after pursuing a three-year law degree program (L.L.B.). I thereafter attended the Norman Manley Law School (1985–1987) where I gained my Certificate of Legal Education (C.L.E.) which qualifies one to practice law in Jamaica and other English-Speaking Caribbean countries.

3. I started my professional life in private practice (1987–2000) and became a Partner in one of Jamaica's most prominent law firms – Dunn, Cox – practicing commercial and civil litigation. I started as an Associate at Dunn, Cox in 1990 and was subsequently made a Partner in 1995 and I served in that capacity between 1995 and early 2000. In 2000, I joined the Government service as a Resident Magistrate (Jamaica's lower court) and spent just over a year in that

occupation. I thereafter became a member of the Attorney General's Department of Jamaica and between 2001 and 2003 served as the Director of Litigation in the Department. That post required me to supervise a large cadre of attorneys-at-law handling civil litigation brought against the Government and I argued many weighty judicial review and constitutional law cases in Court.

4.  In 2003, I was invited by the then Chief Justice of Jamaica to become a High Court Judge (on the Supreme Court of Judicature of Jamaica) and I served in that position between 2003 and 2014. I presided over both civil and criminal matters. Between 2011 and 2013, I served in Jamaica's Commercial Court, handling complex commercial matters. Between 2013 and 2014, I acted on Jamaica's Court of Appeal, Jamaica's second highest Court, with the Judicial Committee of the Privy Council being its highest. Whilst on leave from Jamaica's High Court, I also acted as a Grand Court Judge in the Cayman Islands in 2009 and in 2014, each time for a period of approximately 3 weeks. In all, I spent 12 years on the bench in Jamaica before serving in the Cayman Islands.

5.  I was offered permanent appointment in the Cayman Islands in 2015 and sat as a Judge of the Grand Court for just under five years, between January 2015 and October 2019, when I resigned in order to return to Jamaica. During that time, I sat in all Divisions of the Grand Court, including the Financial Services Division, as well as the Civil, Family, and Criminal Divisions.

6.  I have delivered numerous oral and written judgments/opinions in Jamaica and in the Cayman Islands. In relation to the Cayman Islands, the reported opinions can be seen in the Cayman Islands Law Reports and the unreported opinions are available on the Court's website at www.judicial.ky.

7.  I decided to return home to Jamaica in 2019, but I continue to be available to conduct arbitrations and provide expert evidence on Cayman Islands law from Jamaica. Between

August 2020 and May 2022, I served as Course Director, and subsequently a part-time tutor, tutoring in two courses, viz. civil procedure and trial advocacy, and presiding over mock court case management conferences and trials. In my capacity as a retired judge, I have also since February 2021 been appointed and serving as Chairperson of a three-member Supervisory Appeals Board that hears appeals from deposit taking institutions in relation to decisions by the Governor, and Supervisory Committee, of the Bank of Jamaica, Jamaica's central bank.

8. I have presided over many matters filed in the Financial Services Division of the Grand Court. This includes appraisal cases pursuant to Section 238 of the Cayman Islands Companies Act (as revised) ("**Section 238**"). I have made rulings and decisions in interlocutory applications, including rulings on discovery and the role of expert witnesses, and have prepared for final hearings in Section 238 trials. I also have substantial knowledge of Cayman Islands law governing corporate and securities matters, including public and private M&A transactions, as well as corporate litigation matters before Cayman Islands courts.

9. In this paragraph, I mention some of the most prominent Section 238 cases in which I presided, and the nature of the proceedings involved:

 (a) FSD 75 of 2016: *In the Matter of Homeinns Hotel Group* (discovery).

 (b) FSD 24 of 2017: *In the Matter of Qunar Cayman Islands Limited* (interim payment).

 (c) FSD 129 of 2016: *In the Matter of Qihoo 360 Technology Co. Ltd.* (appointment of forensic expert).

 (d) FSD 123 of 2015: *In the Matter of Fountain Medical Development Limited* (discovery and expert evidence).

(e) FSD 170 of 2016: *In the Matter of E-House (China) Holdings Limited* (Interlocutory ruling. Subsequently, a 10-day trial commenced, but the matter was settled by the parties on the second day of trial while the Company's expert was being cross-examined).

10. Since 2020, I have provided expert opinions on Cayman Islands law for use in: the District Court and Court of Appeal in Amsterdam, the Netherlands; in the United States, namely district courts in New York, California, Delaware, Massachusetts, and Washington D.C., and for the Supreme Court in the State of New York. I have also provided expert opinions for use in an arbitration in Hong Kong. The evidence I have given has been mainly concerned with company law issues, and on a number of these occasions I have opined in relation to Cayman Islands appraisal proceedings under Section 238.

11. I have been engaged by the Petitioners in the above-captioned matters to provide opinions regarding Cayman Islands law, to be used in the application (the "**Application**") under 28 U.S.C. §1782 ("**Section 1782**") in connection with appraisal proceedings pending before the Grand Court concerning 51job, Inc. ("**51job**" or the "**Company**") (the "**Appraisal Proceeding**"). In support of Petitioners' Application, this declaration describes aspects of the statutory appraisal proceedings under Cayman Islands law, as well as certain evidentiary matters related to such appraisal proceedings.

12. To the extent the contents of this declaration are within my personal knowledge, they are true and accurate. To the extent the contents are not within my personal knowledge, they are true to the best of my current knowledge, information, and belief.

13. In the course of drafting this declaration, I have reviewed the following materials:

(e) FSD 170 of 2016: *In the Matter of E-House (China) Holdings Limited* (Interlocutory ruling. Subsequently, a 10-day trial commenced, but the matter was settled by the parties on the second day of trial while the Company's expert was being cross-examined).

10. Since 2020, I have provided expert opinions on Cayman Islands law for use in: the District Court and Court of Appeal in Amsterdam, the Netherlands; in the United States, namely district courts in New York, California, Delaware, Massachusetts, and Washington D.C., and for the Supreme Court in the State of New York. I have also provided expert opinions for use in an arbitration in Hong Kong. The evidence I have given has been mainly concerned with company law issues, and on a number of these occasions I have opined in relation to Cayman Islands appraisal proceedings under Section 238.

11. I have been engaged by the Petitioners in the above-captioned matters to provide opinions regarding Cayman Islands law, to be used in the application (the "**Application**") under 28 U.S.C. §1782 ("**Section 1782**") in connection with appraisal proceedings pending before the Grand Court concerning 51job, Inc. ("**51job**" or the "**Company**") (the "**Appraisal Proceeding**"). In support of Petitioners' Application, this declaration describes aspects of the statutory appraisal proceedings under Cayman Islands law, as well as certain evidentiary matters related to such appraisal proceedings.

12. To the extent the contents of this declaration are within my personal knowledge, they are true and accurate. To the extent the contents are not within my personal knowledge, they are true to the best of my current knowledge, information, and belief.

13. In the course of drafting this declaration, I have reviewed the following materials:

(a) The subpoena schedules attached as Exhibits 1 and 2 to the Declaration of Duane Loft (the "**Subpoenas**"), filed in this proceeding concurrently with this declaration; and

(b) The Declaration of Rocco Cecere in Support of Petitioners' Application ("**Cecere Declaration**" or "**Cecere Decl.**"), filed in this proceeding concurrently with this declaration.

14. I understand from the Cecere Declaration that the Company and certain of the dissenting shareholders each filed a petition before the Grand Court dated July 15, 2022, pursuant to Section 238, seeking the Court's determination of the fair value of the former shareholding in the Company of those shareholders who exercised their right to dissent from the merger (the "**Dissenting Shareholders**"). I also understand from my review of the Cecere Declaration that the Company was delisted from the NASDAQ Global Select Market and taken into private ownership (the "**Merger**"). I am additionally informed by the Cecere Declaration that a directions hearing took place on November 21 and 22, 2022, and that the Grand Court delivered judgment on December 2, 2022 (Exhibit 9, Cecere Decl.).

15. I further understand from my review of the Cecere Declaration that the Application seeks discovery from Kroll, LLC (f/k/a Duff & Phelps, LLC) ("**Duff & Phelps**") and Kroll Securities, LLC (f/k/a Duff & Phelps Securities, LLC) ("**DPS**" and together with Duff & Phelps, "**Respondents**"), relevant to a determination of the fair value of the Company's shares. I additionally understand from my review of the same that Duff & Phelps and DPS acted as independent financial advisors to the special committee of the Company tasked with evaluating the merger at issue in the Appraisal Proceedings.

16. Attached hereto are true and correct copies of the following judicial decisions and authorities of the Cayman and English courts[1] referenced herein: *Re Qunar Cayman Islands Limited* 2018 (1) CILR 199 as **Exhibit A**; *Qihoo 360 Technology Co., Ltd* 2017 (2) CILR 585 as **Exhibit B**; *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009 CILR 553] as **Exhibit C**; *In the Matter of Nord Anglia Education, Inc.* (Unreported, 17 March 2020) as **Exhibit D**; *In the Matter of Trina Solar Limited* (Unreported, 23 September 2020) as **Exhibit E**; *Qunar Cayman Islands Limited* [2017 (2) CILR 24] as **Exhibit F**; *Shanda Games Limited* [2018 (1) CILR 352] as **Exhibit G**; the Supreme Court Practice 1999 at 39/3/2 as **Exhibit H**; *Panayiotou & Ors. v. Sony Music Entertainment* [1994] Ch.142 as **Exhibit I**; *In the Matter of Nord Anglia Education, Inc.* (Unreported, 18 April 2019) as **Exhibit J**; *Compagnie Financier et Commerciale du Pacifique v Peruvian Guano Co.* (1882) 11 QBD 55 as **Exhibit K**; *Renova Resources Private Equity Limited v Gilbertson* (2011 (2) CILR 148) as **Exhibit L**; and *Vernon v Bosley* [1994] PJQR p 337 as **Exhibit M**.

### I. The Scope of Discovery in the Appraisal Proceeding.

17. Cayman Islands Financial Services Division judges – who hear Section 238 cases – do not consider themselves to be experts in valuation. Instead, they rely heavily on the valuation experts appointed by the subject company and dissenting shareholders, respectively, who provide their expert opinion and testimony on the fair value of the dissenting shareholders' shares. As explained by the Grand Court in *Qunar Cayman Islands Limited* [2017 (2) CILR 24], "in determining fair value the court is not itself an expert valuation tribunal and must be guided by the expert evidence from experienced valuers. Such experts typically require access to relevant historical data, documents and information relating to the [subject company's] past trading and

---

[1] English law—from which the Cayman Islands derives its common law system—is considered highly persuasive.

auditing, together with its forecasts (whether produced by internal management or others) in relation to trading in the future and not only those that have been publicly disclosed (or disclosed to advisers in the course of the 'take private process)." (**Exhibit F** ¶ 18.) Therefore, the discovery sought will be used by experts retained by the Dissenting Shareholders (including the Petitioner) and the Company, as well as the Grand Court itself in the Appraisal Proceeding.

18. Pursuant to Cayman Islands law, the Grand Court has the power to order a party to provide discovery of "documents which are or have been in the party's possession, custody or power relating to any matter in question in the cause or matter." (Order 24 rule 3 of the Cayman Islands Grand Court Rules – Vol 1 (2022 Consolidation) ("**GCR**").) Parties are not obliged to produce documents from third parties that are not otherwise in their own "possession, custody or power." Parties to Cayman Islands litigation are required to disclose relevant documents even if they adversely affect that party's case or support another party's case. The scope of discovery in ordinary civil proceedings applies to Section 238 proceedings, and the Grand Court usually orders the company in Section 238 proceedings to provide discovery of "documents which are or have been in the party's possession, custody or power relating to any matter in question in the cause or matter."

19. Cayman Islands law incorporates the principle set forth in the English Court of Appeal case *Compagnie Financier et Commerciale du Pacifique v Peruvian Guano Co.* (1882) 11 QBD 55 (**Exhibit K**), where the Court found (at page 63) that a document can properly be said to contain information which may enable a party to advance his own case or damage his adversary's case—and is therefore equally discoverable—if it is a document which may fairly lead him to a train of enquiry which may have either of these two consequences. The "train of enquiry" test has fallen away under English law but remains part of the common law in the Cayman Islands having

been adopted in cases such as *Renova Resources Private Equity Limited v Gilbertson* (2011 (2) CILR 148) (**Exhibit L**).

20. In addition, the Grand Court has stated that all documents that may be relevant to the valuation of the shares at issue in a Section 238 proceeding should be provided. In *Re Qunar Cayman Islands Limited* 2018 (1) CILR 199, the Cayman Islands Court of Appeal ("**CICA**") affirmed the statement by Parker J at first instance that "'it should be a general obligation of the company to search for and produce *all* documents relevant to fair value.'" (**Exhibit A ¶ 71(iv)**; emphasis in original.) In addition, in *Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585, Martin JA stated that "[t]he sole task of the court is to determine the fair value of the dissenters' shares. To do that, it needs full information." (**Exhibit B ¶ 19**.) This process often requires a significant amount of information and discovery. *See Shanda Games Limited* [2018 (1) CILR 352] ("Since the fair value is not necessarily the same as the merger price or the price at which the shares were trading before the market in them was affected by knowledge of the merger, it is inevitable that the determination will involve an assessment of a *substantial quantity of information* relating to the financial affairs of the company whose shares are to be valued." (**Exhibit G ¶ 22**; emphasis added).

21. Therefore, the Grand Court will consider all reasonable and accepted methodologies to determine fair value that are presented by the parties' experts. Typically, this includes consideration of the value that the target company and buyer agreed upon during the merger process as well as the market price and values determined using the discounted cash flow method or other accepted methodologies.

22. As part of this process, the Grand Court will also consider evidence as to whether the deal process itself was open, competitive, and fair. For example, such an analysis was

undertaken by the Grand Court in *Re Nord Anglia Education, Inc.* (Unreported, 17 March 2020). In *Nord*, the Grand Court considered several conduct-related factors when considering the reliability of the deal price as a guide to the fair value of the dissenting shareholders' shares, including: (a) whether the transaction process "had been carried out in good faith" (**Exhibit D** ¶¶ 114(a) and 125); (b) the motivations of the 'Baring Funds' who had interests on both the buy and sell sides of the transaction (*id.* ¶ 114(b)); (c) the manner in which conflicts were managed (*id.* ¶ 126); (d) the influence that the existence of a controlling shareholder had on the special committee's negotiating stance (*id.* ¶¶ 118 and 124); and (e) the fact that attempts were made to find other bidders (*id.* ¶ 120(a)).

23. Similarly, in *In the Matter of Trina Solar Limited* (Unreported, 23 September 2020), the Grand Court, in determining fair value by assigning a 45% weighting to deal price, considered conduct-related factors such as: (a) a member of the company's two person special committee (whose function was to evaluate the merger proposal): (i) having "not appl[ied] his own mind to what action was required as part of a proper process to ensure that potential competing bidders were encouraged and given adequate opportunity to participate," and (ii) having "failed carefully to review the treatment of strategic buyers or test in any way the adequacy of the steps proposed and taken by Citi to obtain competing interest and bids and was content to leave all important decisions" to someone else (**Exhibit E** ¶ 161); (b) the infrequency of special committee meetings and the special committee's poor record-keeping (*id.* ¶¶ 162 and 163(f)); (c) the special committee's failure to conduct a comprehensive pre-market signing check by failing to properly consider and/or by excluding the company's major competitors as potential strategic buyers, or at least to take advice on the issue (*id.* ¶ 163); (d) the special committee's conduct in negotiating and

signing-off on the deal price with the buyer group (*id.* ¶¶ 164–165); and (e) the manner in which conflicts were managed (*id.* ¶ 178–180).

## II. Respondents Are Not Parties to the Appraisal Proceeding and Thus the Requested Discovery Cannot Be Directly Obtained from Respondents in the Appraisal Proceeding.

24. Documents in the hands of persons other than the Company may also be relevant to the question of fair value. As the CICA explained in *Re Qunar Cayman Islands Limited* (2018 1 CILR 199) (**Exhibit A ¶ 60**)

> [I]f third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company….After all, the question of fair value is closely related to the question of what a willing buyer and a willing seller would exchange for the shares of the Company (or for the Company as a whole): and that question is closely related to valuations conducted within the market generally.

25. However, neither Respondent is a party to the Appraisal Proceeding. The Grand Court has very limited power to order discovery from non-parties such as Respondents.

26. I am furthermore informed by the Cecere Declaration that Respondents are both incorporated in Delaware. Accordingly, they are outside the Grand Court's jurisdiction. The Grand Court has no means to compel Respondents, as entities outside of its jurisdiction, to comply with any third-party discovery order.

27. The Grand Court can issue writs of *subpoena ad testificandum* and *subpoena duces tecum* pursuant to GCR Order 38 rules 13 and 14 to persons or juridical entities within the jurisdiction of the Cayman Islands. However, as Respondents are not within the jurisdiction of the Cayman Islands, these procedures are not available for the requested discovery from Respondents.

28. The Grand Court may, under GCR Order 39 rule 1, order a deposition to be taken from persons both within and outside the Cayman Islands, and may order documents to be

produced which it considers necessary for the purposes of the deposition. Where the person to be deposed is outside the jurisdiction, an application may be made for (i) an order for the issuance of a letter of request to the judicial authorities of the country where that person's evidence is to be taken or, (ii) if the government of that country allows a person to be examined before a person appointed by the Grand Court, for an order appointing a Special Examiner to take the evidence. The Grand Court's jurisdiction is discretionary, and the Grand Court will only exercise it if satisfied that it is necessary in the sense that the witness can give substantial evidential material to the issue and that the evidence cannot be obtained in other ways. *See The Supreme Court Practice 1999* at 39/3/2 (**Exhibit H**).

29. The Grand Court may issue a letter of request that seeks only documents. However, the party making the application is not entitled to what is in substance general discovery; rather, "[t]he letter of request must be confined to particular documents, although these may be described compendiously . . ." *See* per Nicholls V-C in *Panayiotou & Ors. v. Sony Music Entertain*ment [1994] Ch.142, 153 (**Exhibit I**). Such applications are not common in the Cayman Islands. It is more common for litigants, especially in Section 238 appraisal proceedings, to use Section 1782 to obtain evidence in the United States.

30. Therefore, absent assistance from this Honorable Court, which I understand has jurisdiction over Respondents, Petitioners will not have a practicable ability to compel any discovery directly from Respondents in a timely manner.

### III. The Grand Court is Receptive to Evidence Obtained Through Section 1782.

31.	The Grand Court is receptive to the use of Section 1782 applications to obtain discovery in the United States for use in Cayman Islands proceedings.

32.	Indeed, in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553, the CICA held that "prima facie a party who can invoke the jurisdiction of the US District Court under § 1782 may choose to do so" and the right to obtain discovery, including both pre-trial deposition testimony and documents, through Section 1782 "is a right conferred by US law-it is not a right conferred by, or to be withheld under, Cayman law." (**Exhibit C ¶ 57**). In *Lyxor,* the CICA ruled that when a party has a right to avail itself of legitimate foreign process, such as Section 1782, there must be a compelling reason to prevent it from doing so. The CICA held that such a prohibition would only be appropriate where the party was "acting oppressively or abusively" by seeking to rely on its discovery rights under US law. (**Exhibit C ¶ 57**). Cayman Islands courts have thus held that it is permissible for a litigant in a Cayman Islands proceeding to exercise any rights it may have under Section 1782 to obtain relevant evidence, including deposition testimony, for use in those proceedings.

### IV. Admissibility of Evidence.

33.	Under Cayman Islands law, evidence is admissible in civil proceedings if it is relevant, lawfully obtained, and is not otherwise subject to an exclusionary rule of evidence.

34.	The bar for assessing relevance is low. In *Vernon v Bosley* [1994] P.I.Q.R p 337 at page 339 (**Exhibit M**), Hoffman LJ discussed the principles as follows:

> The cardinal principle of admissibility is relevance. But relevance is always a matter of degree. How relevant must evidence be in order to be admissible? Ordinarily, the threshold is very low….But there are limits to the extent to which parties can be allowed free reign.

35. In Section 238 proceedings the only exclusionary rules which could have any real application are the rules regarding privilege. The rule against self-incrimination could conceivably be applicable too, but only in an unusual case.

36. In fact, the admissibility of deposition transcripts obtained under Section 1782 has also been considered in *Lyxor*. In that case, the respondent sought Section 1782 depositions from key witnesses that had given witness statements on behalf of the appellant and who were potential witnesses at the trial of the Cayman Islands proceedings. The appellant applied to the Grand Court to prevent the respondent from continuing the Section 1782 Proceedings to compel the witnesses to give depositions. After failing at first instance, the appellant appealed.

37. The CICA refused the appellant's appeal. It held, among other things, that the question of whether the Section 1782 deposition should be permitted to proceed was distinct from the admissibility of the Section 1782 deposition transcript. In particular, it held (**Exhibit C ¶ 47**):

> The use to which the transcripts of depositions taken in New York may be put in the Cayman proceedings is, of course, a matter for the Grand Court. … no transcript of depositions would be admissible as evidence at trial without an order of the Grand Court. In deciding what order to make in this respect, it will be open to the Grand Court to restrict the use which can be made of the deposition transcripts in the course of any cross-examination of Mr. Rosenberg and Mr. Phlipponneau at the trial.

38. Here, the proposed deponents are not parties in the Appraisal Proceeding and cannot be compelled to be witnesses at trial. Accordingly, any deposition transcript of corporate representatives of Respondents may be admissible as hearsay statements under the Cayman Islands Evidence Law, provided that the procedure in GCR Order 38 has been complied with.

39. I understand that deposition transcripts obtained pursuant to Section 1782 were submitted into evidence and considered by the Cayman Islands courts in a relatively recent Section 238 appraisal proceeding, *In the Matter of Nord Anglia Education, Inc.* (Unreported, 17 March 2020) (**Exhibit D**). Kawaley J, at paragraph 49, expressly referred to the 2,900 documents that

the financial advisor to the special committee of the company's board of directors produced pursuant to a Section 1782 proceeding.

40. I have reviewed the Subpoenas. In my view, they seek the types of information that would prima facie be relevant to the determination of fair value in a Section 238 proceeding.

Executed on December 13, 2022 at Russell Heights, Kingston, Jamaica, West Indies.

_____
INGRID MANGATAL

Former Judge of the Grand Court of the Cayman Islands, Retired Judge of the Supreme Court of Judicature of Jamaica