# EXHIBIT K

was there any evidence at all to go to the jury of loss by perils of the sea when, there being no circumstances of wind, weather, or navigation unfavourable to the ship, or involving the least danger, that ship is going up a river like the Thames, and she is run down by a negligent steamer? It seems to me that there was not, and it is on that ground, though I do not dissent in the least from what Brett, L.J., has said, that I think the defendants are not entitled to have the verdict and judgment in their favour, and that judgment should be entered for the plaintiffs.

1883

WOODLEY
v.
MICHELL.

Bowen, L.J.

*Judgment for the plaintiffs.*

Solicitors for plaintiffs: *Waltons, Bubb, & Walton.*
Solicitors for defendants: *Clarkson, Greenwell, & Wyles.*

W. P.

[IN THE COURT OF APPEAL.]

THE COMPAGNIE FINANCIERE ET COMMERCIALE DU PACIFIQUE
v. THE PERUVIAN GUANO COMPANY.

1882
*Dec.* 20.

*Practice—Production of Documents—Affidavit of Documents—Application for further Affidavit—" Material to any Matter in Question in the Action "— Rules of Supreme Court,* 1875, *Order XXXI., rule* 12.

Documents are material to the matters in question in the action within the meaning of Order XXXI., rule 12, if it is not unreasonable to suppose that they may contain information directly or indirectly enabling the party seeking discovery, either to advance his own case, or to damage the case of his adversary.

The plaintiff company sued the defendant company for breach of contract: the defence to the action was that no contract had been concluded, and that only negotiations had taken place between the parties. The defendants having obtained an order for an affidavit of documents, the plaintiffs set out, amongst others, their minute-book, which referred to certain documents and letters; the entries as to these documents and letters were of a date subsequent to the date of the alleged breach of contract; the documents and letters were not set out by the plaintiffs in their affidavit. The defendants claimed a further and better affidavit from the plaintiffs, setting out the documents and letters above-mentioned, on the ground that they might show that after the alleged breach the parties were still negotiating, and might tend to disprove the plaintiffs' allegation that a contract had been concluded:—

*Held,* that the plaintiffs were bound to make a further affidavit of documents.

APPEAL by the defendants from a decision of a Divisional Court, affirming an order of Pearson, J., for limited affidavit as to documents.

1882

Compagnie
Financiere
du Pacifique
v.
Peruvian
Guano Co.

The plaintiffs claimed specific performance of an agreement entered into with the defendants for the delivery of certain stocks of guano which were in their hands; the plaintiffs further claimed damages for delay in performing the agreement, and also an injunction.

The defendants were agents under a contract made with the Republic of Peru, whereby the Republic assigned all guano to the defendants for sale in England, and also in various countries in Europe. An action of detinue was brought by the plaintiffs against the defendants, in which the plaintiffs alleged that they had become the assignees of the Republic of Peru for all guano, which was in the possession of the defendants. Pending this action, the plaintiffs commenced the present action, in which they alleged that the parties had entered into negotiations for the settlement of the first action, and for the delivery of the guano, and that such negotiations terminated in a verbal agreement on the 6th of October, 1881, which was subsequently embodied in writing and sent to the defendants to London to sign; but that the defendants declined to sign it and to carry out the arrangement. The day of the alleged breach was the 1st of November. The defence alleged that the persons who negotiated the arrangement were not authorized to do so on behalf of the respective companies; and, further, that the matter never went beyond negotiation, and continued negotiation up to, and subsequent to, the 6th of October.

The defendants obtained an order under Rules of the Supreme Court, 1875, Order XXXI. rule 12, for an affidavit of documents. The plaintiffs, by their manager, made an affidavit of documents in the usual form, in which they disclosed, inter alia, the minute-book of the proceedings of the plaintiff company. The defendants claimed discovery of the following documents, which were disclosed in the minute-book: first, drafts of arrangement between the Peruvian Guano Company, and the plaintiff company, referred to in the board minutes of the plaintiff company, dated the 28th of September, 1881; secondly, the letter and two telegrams received by the plaintiffs from Mr. Adams, referred to in the board minutes of the plaintiff company, dated the 2nd of November, 1881; thirdly, two further drafts relating

to the form of communication to be made, and the letter from M. de Germiny to M. Homberg, respectively referred to in the board minutes, dated the 3rd of November, 1881; fourthly, a letter addressed to Mr. Adam, referred to in the board minutes, dated the 8th of November, 1881; and, fifthly, several letters written from London by Mr. Adam to the plaintiff company, or directors thereof, and the several letters and telegrams sent by the plaintiff company, or directors thereof, to Mr. Adam, as referred to in the board minutes, dated the 16th of November, 1881. The minute with regard to documents No. 2, was in French, to the following effect:—" The president reads a letter and two despatches received from Mr. Adam, at this moment in London, which unfold to the company the new difficulties which the Peruvian Guano Company raise, who seem no longer willing to carry out their engagements."

1882

COMPAGNIE FINANCIERE DU PACIFIQUE
v.
PERUVIAN GUANO CO.

The defendants took out a summons for further affidavit of documents. The master declined to make an order. On appeal, Pearson, J., sitting at chambers, made an order for a further affidavit of documents as to No. 1, on the ground that they were in existence before the date of the alleged contract; and he refused the application as to the remainder. In the Queen's Bench Division, the Court (Field and Stephen, JJ.,) were divided in opinion, Field, J., thinking that the documents ought to be produced, while Stephen, J., thought that the decision of Pearson, J., was right. The appeal was accordingly dismissed. The defendants appealed to this Court.

Dec. 16, 20. *Shiress Will*, for the defendants. The defendants are entitled to an order for a further affidavit as to documents on the part of the plaintiffs. The affidavit which has been made has disclosed certain entries in the minute book of the plaintiff company, and amongst these is one of the 2nd of November, 1881, which refers to a letter and two telegrams, and there are others of the 3rd, 8th, and 16th of November, 1881, also referring to telegrams and letters. If the minutes themselves are relevant, so must be the matters which are therein referred to, and the right of the defendants to a further affidavit and discovery as to these documents comes within the rule laid down by

1882

COMPAGNIE FINANCIERE DU PACIFIQUE
*v.*
PERUVIAN GUANO CO.

the Court of Appeal in *Jones* v. *Monte Video Gas Co.* (1) The parties were only negotiating; no contract was concluded.

If the documents, of which production is sought, relate to some matter in question in the action within the meaning of Rules of the Supreme Court, 1875, Order XXXI. rule 12, it is unnecessary to shew that they can be relied upon as evidence at the trial, or even that they bear upon the issues.

*Russell*, Q.C., and *Pollard*, for the plaintiffs. The affidavit made by the plaintiffs is primâ facie binding on the defendants, it is exhaustive, and it lies on the defendants to shew that it is incorrect. To succeed upon this application, the defendants must shew that the documents have been wilfully, or at all events wrongfully, withheld by the plaintiffs. The defendants ought not to have applied for a further affidavit; if they are not satisfied with the plaintiffs' affidavit of documents, they ought to have administered interrogatories. The defendants, before they can succeed in the present application, must shew that the omitted documents are material; and this they have wholly failed to do.

[BRETT, L.J. The judgments in *Jones* v. *Monte Video Gas Co.* (1), do not lay down any rule as to what documents must be produced; they merely prescribe the tests by which it may be ascertained whether the party making the affidavit has properly set out the documents.]

The documents, of which the defendants seek discovery, are not shewn to be material and relevant to the action. Further, there is no evidence as to documents No. 3, that they ever were in the plaintiffs' possession.

The defendants might shew by affidavit that the documents sought to be discovered are material to the question in the cause.

[BRETT, L.J. It seems to me that those documents are material to the matters in question in the action within the meaning of Order XXXI. rule 12, as they, it is not unreasonable to suppose, may contain information enabling the party seeking discovery, either to advance his own case or to damage the case of his adversary.]

A document is not "material," unless it relates to the subject-

(1) 5 Q. B. D. 556.

matter of the action, and the documents of which production is sought do not relate to the question in dispute.

*Shiress Will*, in reply. The defendants are not bound by the description of the documents given in the plaintiffs' affidavit: *Attorney General* v. *Emerson* (1); *Saull* v. *Browne* (2); *Noel* v. *Noel*. (3)

1882
COMPAGNIE FINANCIERE DU PACIFIQUE
v.
PERUVIAN GUANO CO.

BAGGALLAY, L.J. This action is brought for an alleged breach of an alleged contract; the defence is that there was no contract and no breach; that the whole matter rested in negotiation. The plaintiffs made an affidavit of documents under Order XXXI. rule 12; but the defendants were dissatisfied with it, and applied for a further affidavit as to certain documents, which may be described as Nos. 1, 2, 3, 4, 5. The application came on to be heard by Pearson, J., by way of appeal from the Master, who had refused to make any order; Pearson, J., ordered a further affidavit as to No. 1, but refused it as to the others; by reason of a difference of opinion in the Queen's Bench Division, his decision was affirmed, and hence the present appeal.

The case of *Jones* v. *Monte Video Gas Co.* (4), has laid down rules of real importance, as to the circumstances under which a further affidavit of documents will be required; it has decided that, when a party has denied by his affidavit that he has in his possession any documents "relating to any matter in question in the action," no further affidavit will be required, unless it can be shewn, (a) from the affidavit itself, or (b) from the documents therein referred to, or (c) from an admission in the pleadings of the party swearing the affidavit, that other documents exist in his possession or power, which are material or relevant to the question in dispute in the action. The present application is based on the second of these tests. It is contended by the defendants that it appears from the minute book of the company, which is referred to in the first affidavit, that the documents described as Nos. 2, 3, 4, and 5, are in the possession or power of the plaintiffs and that they relate to questions in the action.

I assent to the suggestion made by Brett, L.J., in the course

(1) 10 Q. B. D. 191.  
(2) Law Rep. 17 Eq. 402.  
(3) 1 De G. J. & S. 468.  
(4) 5 Q. B. D. 556.

1882

COMPAGNIE
FINANCIERE
DU PACIFIQUE
v.
PERUVIAN
GUANO CO.

Baggallay, L.J.

of the argument, that a document, which, it is not unreasonable to suppose, may tend either to advance the case of the party seeking discovery, or to damage the case of his adversary, should be regarded as a document relating to a matter in question in the action. I proceed to apply these tests to the documents in respect of which this appeal is brought. As regards No. 3, the objection taken by the plaintiffs, that it does not appear from the affidavit already sworn that it is in the possession or power of the plaintiffs, must I think prevail; but as regards Nos. 2, 4, and 5, I am of opinion that it appears from the minutes that they are in the possession or power of the plaintiffs, and that it is not unreasonable to suppose that they may contain information, directly or indirectly, enabling the defendants to advance their own case or to damage the case of their adversaries. We must bear in mind that the case of the defendants is that there was negotiations only, and not a concluded contract, whilst the contention of the plaintiffs is that there was a contract, and that the defendants have committed a breach of it. I think it unnecessary to go through the documents in detail; but I will refer to No. 2, by way of illustration; there is an entry upon the minute book of the plaintiffs, under date of the 2nd of November, to the effect that the president read a letter and two telegraphic despatches received from Mr. Adam, the agent of the company in London, who pointed out to the company new difficulties to which the Peruvian Guano Company, the defendants, had given rise, and which appeared to indicate that they were no longer intending to carry out their original engagements. It appears to me that a letter and telegraphic despatches, which are so described in the minutes, must have, upon a reasonable view of the case, a bearing upon the question really in conflict between the two parties, whether there was an actually concluded contract, or only a bargaining or negotiation continuing from time to time; and if this view is correct, I can come to no other conclusion than that a further affidavit ought to be made. The appeal consequently must be allowed as regards Nos. 2, 4, and 5.

BRETT, L.J. In this case the defendants under the rules and orders took out a summons requiring the plaintiffs to make an

affidavit of all documents in their possession or under their control relating to any matter in question in the action: thereupon the plaintiffs made an affidavit setting out many documents, which they admit to be in their possession and under their control, and which they admit, in some sense, to relate to matters in question in the action. The defendants have taken out another summons, which calls upon the plaintiffs to shew cause why they should not make a further affidavit. The meaning of that summons seems to me to be this, that the plaintiffs did not in their affidavit set out all the documents which they ought to have set out in that affidavit. Upon this second summons of the defendants the first question raised is, what must the defendants shew in order to support it. It seems to me that they must shew necessarily that the plaintiffs had not set out in the affidavit all the documents which they ought to have set out. Before *Jones* v. *Monte Video Gas Co.* (1) was decided, uncertainty was felt as to the sources from which the Court might derive information in order to determine whether the party, against whom the application was made, had given a proper answer. In this case the plaintiffs in their affidavit set out all the documents which in their view they ought to set out. It was decided in *Jones* v. *Monte Video Gas Co.* (1) that a contentious affidavit, as it was called, of the party making the second application, can not be looked at, that is to say, that if nothing appeared in the affidavit made on the first summons, and if nothing can be gathered from other sources which I will presently mention, the party taking out the second summons cannot be heard to say in opposition to the affidavit of his opponent that he believes, and has good grounds for believing, that that opponent has other documents material to the question in the action. It was held in *Jones* v. *Monte Video Gas Co.* (1) that the only sources into which the Court could look in order to ascertain whether the first affidavit was sufficient or not, was the affidavit itself, or the documents referred to in that affidavit, or the pleadings which had been delivered between the parties, and that in order to justify an order upon the second summons the Court must be satisfied from one of those sources that the party

1882
COMPAGNIE
FINANCIERE
DU PACIFIQUE
v.
PERUVIAN
GUANO CO.

Brett, L.J.

(1) 5 Q. B. D. 556.

1882
COMPAGNIE
FINANCIERE
DU PACIFIQUE
v.
PERUVIAN
GUANO CO.

Brett, L.J.

making the first affidavit had omitted to set out in it some documents which are material to the question in dispute in the action. The case of *Jones* v. *Monte Video Gas Co.* (1) did not enter upon the question as to the nature of the documents, which may be required to be produced. In the present case the sources from which the defendants say that they can shew that the plaintiffs have not set out all the material documents, are the documents mentioned in the plaintiffs' affidavit. Therefore the question in the present case is not governed by *Jones* v. *Monte Video Gas Co.* (1); it goes beyond the decision in that case. The question is not as to the sources to which the Court must look, but as to the nature of the documents which ought to be set out in the affidavit. The nature of the documents, which ought to be set out in the affidavit, may be gathered from the rules and orders of the Judicature Acts. The party swearing the affidavit is bound to set out all documents in his possession or under his control relating to any matters in question in the action. Then comes this difficulty: What is the meaning of that definition? What are the documents which are documents relating to any matter in question in the action? In *Jones* v. *Monte Video Gas Co.* (1) the Court stated its desire to make the rule as to the affidavit of documents as elastic as was possible. And I think that that is the view of the Court both as to the sources from which the information can be derived, and as to the nature of the documents. We desire to make the rule as large as we can with due regard to propriety; and therefore I desire to give as large an interpretation as I can to the words of the rule, "a document relating to any matter in question in the action." I think it obvious from the use of these terms that the documents to be produced are not confined to those, which would be evidence either to prove or to disprove any matter in question in the action; and the practice with regard to insurance cases shews, that the Court never thought that the person making the affidavit would satisfy the duty imposed upon him by merely setting out such documents, as would be evidence to support or defeat any issue in the cause.

The doctrine seems to me to go farther than that and to go as

(1) 5 Q. B. D. 556.

far as the principle which I am about to lay down. It seems to me that every document relates to the matters in question in the action, which not only would be evidence upon any issue, but also which, it is reasonable to suppose, contains information which *may* —not which *must*—either directly or indirectly enable the party requiring the affidavit either to advance his own case or to damage the case of his adversary. I have put in the words " either directly or indirectly," because, as it seems to me, a document can properly be said to contain information which may enable the party requiring the affidavit either to advance his own case or to damage the case of his adversary, if it is a document which may fairly lead him to a train of inquiry, which may have either of these two consequences: the question upon a summons for a further affidavit is whether the party issuing it can shew, from one of the sources mentioned in *Jones* v. *Monte Video Gas Co.* (1), that the party swearing the first affidavit has not set out all the documents falling within the definition which I have mentioned and being in his possession or control. I agree that the party issuing the summons for a further affidavit is bound by the description given in the sources of information mentioned in *Jones* v. *Monte Video Gas Co.* (1): that is to say, he is bound to a certain extent: I do not think that he would be bound absolutely by every description of their contents if the Court can see, from the nature of them, that the description of them is not or may not reasonably be correct. I do not think that the Court is bound any more on the second summons than on the first to accept absolutely everything which the party swearing the affidavit says about the documents, but the Court is bound to take his description of their nature. The question must be, whether from the description either in the first affidavit itself or in the list of documents referred to in the first affidavit or in the pleadings of the action, there are still documents in the possession of the party making the first affidavit which, it is not unreasonable to suppose, do contain information which may, either directly or indirectly, enable the party requiring the further affidavit either to advance his own case or to damage the case of his adversary. In order to determine whether certain documents are within that description,

1882

COMPAGNIE
FINANCIERE
DU PACIFIQUE
v.
PERUVIAN
GUANO CO.

Brett, L.J.

(1) 5 Q. B. D. 556.

1882

COMPAGNIE
FINANCIERE
DU PACIFIQUE
v.
PERUVIAN
GUANO Co.

Brett, L.J.

it is necessary to consider what are the questions in the action: the Court must look, not only at the statement of claim and the plaintiffs' case, but also at the statement of defence and the defendants' case. In the present action it is true to say that the contention of the plaintiffs is that there was a concluded agreement, and that there was a breach of that agreement on a particular day. I quite agree that these documents, which are referred to in the minutes to which our attention has been drawn, cannot affect the plaintiffs' case if it be true; for the documents, of which production is now sought, came into existence after the alleged breach. But the defendants' case is that there never was a concluded agreement, and of course there never was or could be a breach of an agreement which never existed. The defendants' case is that, from the beginning to the end of the whole transaction, even up to the time of bringing the action, the whole matter was in negotiation—there was one unbroken series of negotiations. Therefore, if the defendants can shew that there are documents in the possession of the plaintiffs which, it is not unreasonable to suppose, do contain information which may support the defendants' case, those documents, as it seems to me, ought to have been set out by the plaintiffs in the original affidavit, and must be set out by them in a further affidavit. That drives us to the question whether the documents are such as do contain, in our opinion, matters which may support the defendants' case that there were merely continuing negotiations. Take the minute with regard to documents No. 2, according to which the president read a letter and two despatches received from Mr. Adam, and setting forth to the company the new difficulties which the Peruvian Guano Company were raising. It is said that these documents cannot be material because they are subsequent to the date when the contract is alleged to have been entered into; but as the case for the defendants is that there were continuing negotiations, new propositions in a continuing negotiation are part of the negotiation; and therefore it seems to me that the defendants do shew that the plaintiffs have documents in their possession which may reasonably be supposed to support the defendants' case, if the defendants' case is true. I have felt very great difficulty in differing from Pearson, J., because there is no

judge whose opinion I should more anxiously regard: but as to No. 2, I am bound to say that I think he gave too minute a construction to rule 12 of Order XXXI., and that he insufficiently considered not only what was the plaintiffs' case, but also what was the defendants' case. With regard to the other documents, except No. 3, to which my learned Brother has alluded, it seems to me that they are in the same category as No. 2, unless they are attempts to negotiate a settlement or a compromise. If I thought that they did appear to be attempts at negotiation for a settlement, I should be clear that no affidavit ought to be made with regard to them, because negotiations to effect a settlement cannot be material with regard to matters in dispute in the action. I may be wrong, but I have come to the conclusion that it is not unreasonable to suppose that these are not negotiations for a settlement, but that they do contain information which may shew that there were continuing negotiations, and therefore they seem to me to be within the same category as documents No. 2. It may turn out that my view is wrong, and that these documents are attempts to negotiate a settlement, and if that is so, they will be properly rejected if they are offered in evidence at the trial; but what I say is, the rule which governs us at this moment is that they appear to be documents which, it is not unreasonable to suppose, do contain information which may support the defendants' case. Therefore I think that the further affidavit must be made with regard to them.

This judgment does not at all determine whether the defendants can have inspection of them after the further affidavit has been made, for after the affidavit has been made and privilege in respect of them has been claimed, on the ground that they are sworn to be matters of negotiation for a compromise, it may be that the defendants will have no right to inspect them. That is a matter as to which I say nothing; I give no opinion about it. The further affidavit must be made on the ground which I have mentioned; but with regard to documents No. 3, I think it impossible to say that the plaintiffs ought in their first affidavit to have set forth documents which are not in either their power or their control, and therefore, on the ground that the defendants, who now ask for a further affidavit with regard to them, fail to

1882
COMPAGNIE
FINANCIERE
DU PACIFIQUE
v.
PERUVIAN
GUANO CO.

Brett, L.J.

1882

COMPAGNIE FINANCIERE DU PACIFIQUE v. PERUVIAN GUANO CO.

Brett, L.J.

shew that they are documents which ought to have been mentioned in the first affidavit, no further affidavit is to be made as to them. I repeat that our present judgment does not convey any opinion as to the effect of the documents when they have been disclosed, and when they are offered in evidence at the trial.

*Appeal allowed.*

Solicitors for plaintiffs: *Freshfields & Williams.*
Solictors for defendants: *C. & S. Harrison & Co.*

J. E. H.

---

1883
March 13.

THE QUEEN *v.* SCHNEIDER.

*Licensing Acts—Beer Dealers' Retail Licenses Act,* 1882 (45 & 46 *Vict.* c. 34), s. 1—" *Off* " *Licenses—Renewal—Appeal.*

The right of appeal to quarter sessions, from a refusal of licensing justices to renew a certificate for a license to sell beer not to be consumed on the premises, has not been taken away by the Beer Dealers' Retail Licenses Act, 1882 (45 & 46 Vict. c. 34) s. 1.

RULE to quash an order of general quarter sessions of Lancaster, made subject to a Case, of which the following are the material parts.

The appellant is a grocer and beerseller at Barrow-in-Furness, and the respondents are the licensing justices for the licensing division of Barrow-in-Furness.

The appellant has for several years been the holder of a justices' certificate and an excise license to sell beer not to be consumed on his premises.

[The case then stated that the appellant applied for a renewal of his certificate, and facts were set out from which it appeared that the formalities required by the Licensing Act, 1872 (35 & 36 Vict. c. 94), s. 42, and the Licensing Act, 1874 (37 & 38 Vict. c. 49) s. 26, to be observed in cases of opposition to the renewal of a certificate had not been complied with.]

The respondents who are personally well acquainted with the district, without hearing any evidence, and refusing to hear the evidence either of the appellant himself or any of his witnesses,