# EXHIBIT 9



**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

CAUSE NOs. FSD 155 & 156 OF 2022 (DDJ)

IN THE MATTER OF SECTION 238 OF THE COMPANIES ACT (2022 REVISION)

AND

IN THE MATTER OF 51JOB, INC.

| | |
|---|---|
| **Appearances:** | Mr Mac Imrie KC, instructed by Mr Luke Stockdale, Mr Malachi Sweetman and Mr Adrian Davey of Maples and Calder (Cayman) LLP, for the Company |
| | Mr Jonathan Adkin KC, instructed by Mr Rocco Cecere, Mr Zach Hoskin and Mr Ronan O'Doherty of Collas Crill; Mr Rupert Bell and Mr Patrick McConvey of Walkers; Mr James Eggleton of Carey Olsen; and Mr Christopher Easdon of Campbells for the Dissenters |
| **Before:** | The Hon. Justice David Doyle |
| **Heard:** | 21 and 22 November 2022 |
| **Draft Judgment Circulated:** | 29 November 2022 |
| **Judgment Delivered:** | 2 December 2022 |

### HEADNOTE

*Directions in respect of petitions filed pursuant to section 238 of the Companies Act (2022 Revision)*



# JUDGMENT

**Introduction**

1. At the end of the directions hearing on 22 November 2022 I reserved judgment. I now deliver judgment.

2. In this case the Court will, in due course, be called upon to make a determination of the fair value of the shares held by various dissenters in 51job, Inc. (the "Company") together with a fair rate of interest if any, on the amount payable by the Company to various dissenters.

3. The Company and the dissenters had sensibly agreed some of the terms of a draft directions order leading to the trial of this case but there were a number of issues which were not agreed and which required the determination of the Court. I again stress the duty of the parties and their attorneys to help the Court to further the overriding objective of dealing with cases justly.

4. I have to say that during the hearing there appeared to be a somewhat hostile atmosphere between the attorneys. The exchanges between counsel appeared a bit too tetchy at times. I suspected a lot of that was generated by those who instructed the attorneys and the amounts at stake. The position may not have been helped by the Court having to sit until 7pm on the first day as concern had been expressed as to whether there was going to be sufficient time available to deal with all the remaining disputed issues. As it transpired we finished on the morning of the second day.

5. I express the wish that going forward the attorneys adopt a more helpful and cooperative approach. This will further the overriding objective. I think it is important to stress that pursuant to the overriding objective and the duties of attorneys as officers of this Court that there should be more positive cooperation and less negative confrontation between litigants and their attorneys. Litigants, as they are duty bound to do, need to try a lot harder to help the Court to further the overriding objective of dealing with matters justly and attorneys also need to try a little harder to assist the Court in the proper and efficient administration of justice. Litigants and their attorneys



must openly and sensibly cooperate and assist the Court in respect of the overriding objective. As Segal J put it in *Great Simplicity Investment Corporation v Bitman Technologies Holding Company* (FSD 247 of 2019 (NSJ) unreported judgment 3 August 2020) at paragraph 8(i):

> "*I recognise that these proceedings arise out of a hotly contested and deeply felt dispute where the battle lines have been firmly drawn for some time but in my view both parties would benefit from increased cooperation between their legal advisers.*"

6. I am grateful for the continuing assistance of the parties and counsel in this respect.

7. It would have been helpful in this case and may perhaps be helpful in future cases, as discussed with counsel, if prior to the skeleton arguments being filed the attorneys agreed on the issues in dispute and that these were all covered in the skeleton arguments. In this case the numbering and description of the disputed issues of both the Company and the dissenters were different, making cross-referencing difficult. Moreover it appears that the privilege issue was not on the agenda and did not appear in the skeleton argument of one of the parties and therefore had to be adjourned by agreement. Furthermore, issue 11 "Schedule of Trades" was a new issue and I did not have the benefit of it being dealt with in the skeleton arguments. A full list of numbered disputed issues should be filed well in advance of the hearing and it would be helpful, again well in advance of the hearing, to have a summary table of the numbered list of issues in dispute with the issue being concisely identified, a summary of the respective positions adopted in respect of such issues and cross references to the paragraphs in the skeleton arguments and the evidence dealing with such issues. It would also be helpful if an agreed bundle of joint authorities could be provided rather than separate bundles on behalf of the company and the dissenters with duplicated authorities, as unfortunately occurred in this case.

8. I was keen to get these determinations on the disputed issues (with brief reasons) out to the parties as soon as possible after the hearing and before the Christmas and New Year break in order that the parties would know where they stood in respect of the future case management of these



proceedings. This judgment does not therefore set the submissions or the law out in great detail but I have full regard to the submissions put before the Court and the relevant law, which is already well established in respect of the issues arising for determination in this case. Moreover, I do not refer to chunks of the evidence presented to the Court but have full regard to it in arriving at my determination of the disputed issues.

**Determination of the issues**

9. Before I turn to the determination of the issues that have not been agreed, I should emphasise that the agreements arrived at between the parties in respect of some of the issues in the particular circumstances of this case were no doubt arrived at as a result of pragmatic compromises on both sides and should not be regarded as "standard precedents", especially as such issues were not the subject of detailed judicial consideration and determination.

*Issue 1 – How long should the Company have to complete its discovery?*

10. The Company suggests rolling discovery with a maximum of 196 days. The dissenters suggest 60 days.

11. I have considered the evidence provided and in particular note what are described as the "complicated factors" in respect of the Company's discovery. I do not think that the Company has dragged its heels in respect of discovery. I am content to accept the timescales requested by the Company. This should ensure that proper and full discovery is provided. This will assist the dissenters and ultimately the Court. The timescales are generous but it may be that out of an abundance of caution the Company should put a couple of additional people into their discovery team to ensure that they are met. The Company should not expect any extensions and should put sufficient resources into the discovery process to ensure that these generous timescales are met.

_____
*221202 In the Matter of 51job, Inc. – Judgment – FSD 155 & 156 of 2022 (DDJ)*

Page **4** of **14**



*Issue 2 – foreign discovery applications*

12. I accept that that the time period for the determination of any foreign discovery applications is not entirely in the control of the applicant for such orders or indeed this Court. I do however want to encourage applicants to make such applications at an early stage and to progress them expeditiously. They cannot be allowed to unduly delay the determination of the Cayman Islands proceedings which under section 7 of the Bill of Rights scheduled to the Cayman Islands Constitution must be determined "within a reasonable time".

13. I am content to grant directions in accordance with the dissenters' modified proposals in this respect which appear consistent with the approach adopted and orders made in previous cases. The letter "a" requires to be inserted in paragraph 49 before "foreign" and after "seeks".

14. I am content with the Company's suggested paragraphs 50 and 51 which is in similar terms to the provisions in the Consent Order dated 28 September 2022 in *Re 58.com Inc.* (FSD 275 of 2020 (MRHJ)). I agree that it strikes the right balance between not unduly restricting the dissenters' ability to use Company documents where their use would not prejudice the Company (because the documents being used would already have been seen by the target of the application) while at the same time ensuring that for other documents, the Company has a right to object in respect of their proposed use. I have considered the dissenters' submissions in respect of the implied undertaking but think it sensible and fair to include the protections and restrictions as were included in *Re 58.com Inc.*, albeit by way of agreement. If such restrictions do in practice turn out to severely hamper the dissenters' ability to gather evidence and unfairly disadvantages them then they can come back to Court, if absolutely necessary, under the general liberty to apply provision. I should stress that, in any event, under paragraph 51 the Company shall not unreasonably withhold its consent to any request by the dissenters to use additional relevant documents discovered by the Company in the proceedings for the purposes of any application for a foreign discovery order.



15. I am not persuaded that the additional provisions requested by the Company as to additional prior notice, completion of proceedings, issues of privilege, and issues relating to transcripts of depositions are necessary or appropriate or fair to the dissenters and do not make such directions.

*Issue 3 – deal process experts?*

16. I note all that is written and said on this hotly disputed issue of deal process experts but think I can deal with this topic fairly shortly.

17. The dissenters represented by Mr Adkin submitted that in "the very unusual circumstances of the present case" permission should be granted at this stage for each of the Company and the represented dissenters to engage experts in "the separate field of deal process". Despite Mr Adkin's protestations that they were not trying to import Delaware law and practice into Cayman law and practice in respect of separate deal process experts, the affidavits filed on behalf of the dissenters had, as I think Mr Adkin fairly recognised, that flavour. At times when reading some of the affidavit evidence I wondered whether I was sitting in the Cayman Islands or Delaware.

18. Mr Adkin submitted that this case is the only section 238 case where the agreement arrived at between the company and the purchasers was comprehensively and radically renegotiated and the deal price so significantly reduced as a consequence of such renegotiation.

19. Mr Adkin referred to cases where experts other than valuation experts (such as industry experts) had been used. Mr Imrie countered by referring to Segal J's criticisms in *Re Trina Solar Limited* (FSD 92 of 2017 (NSJ), unreported judgment, 23 September 2020) of the "unfortunate failure to coordinate the expert evidence to be given by the industry experts and the valuers" (paragraph 8(e) of the judgment). Mr Adkin submitted that each case must be dealt with on its own facts and circumstances.



20. Mr Adkin reminded me of comments in *Re JA Solar Holdings Co., Ltd.* (FSD 153 of 2018 (ASCJ), unreported judgment, 18 July 2019) in respect of relatively "standard form" directions. The former Chief Justice Smellie stated at paragraph 16 (vi):

> *"each of the company and the dissenting shareholder(s) instruct a valuation expert (with the potential that the Court may also grant leave to the parties to instruct another type of expert, such as an industry expert or interest rate expert, if the Court believes this would be of assistance)."*

21. A great deal of the evidence put before the Court on this issue number 3 referred to the position in Delaware. Based on the submissions from counsel it does not appear that Delaware benefits from the overriding objective or the restrictions on adducing expert evidence that we have in the Cayman Islands. The evidence presented to me in respect of Delaware law and procedure on testimony by expert witnesses included references to Rule 702 of "Delaware Rule of Evidence" which provides in effect that a witness who is qualified as an expert may testify if the opinion "will help the trier of fact to understand the evidence or to determine a fact on issue." The expert evidence therefore must be helpful, which makes good sense.

22. In Cayman Islands law and procedure we have the overriding objective and restrictions on the production of expert evidence. The overriding objective requires this Court to deal with every case in "a just, expeditious and economical way". The FSD Users Guide at B5 pages 41-45 refers to the topic of expert evidence in the Cayman Islands. Parties are directed to bear in mind that expert evidence may lead to unnecessary expense. In the Cayman Islands the parties need to apply for the Court's leave to call an expert witness. The Court may limit the length of an expert report. The use of a single joint expert in appropriate cases is encouraged. Strict duties are imposed on experts and parties instructing experts. In the Cayman Islands the expert must provide independent assistance to the Court by way of an objective unbiased opinion in relation to relevant matters within his expertise. An expert witness should never assume the role of an advocate or seek to promote a client's case. In the Cayman Islands expert evidence presented to the Court should be,



and should be seen to be, the independent product of the expert uninfluenced by the pressures of litigation or any party. It is incumbent on the parties to choose an appropriate expert who can deal with the relevant issues. If such issues can be dealt with by one expert rather than a number of experts then such is to be encouraged in accordance with the Cayman Islands overriding objective. Cayman Islands law and procedures seems to differ from Delaware law and procedure in this area. There appears to be a different litigation culture in the different jurisdictions.

23. I have considered *Re Nord Anglia Education, Inc* [2018 (1) CILR 164] and Kawaley J's refusal, in the particular circumstances of that case, to permit "an extra expert" to deal with "the sales process issue" as he did not feel that the issue was "likely to be so central to the valuation exercise as to justify incurring the costs of an additional layer of expert evidence" (at paragraph 46). It appears in that case that both the company's and the dissenters' valuation experts considered themselves competent to opine on the deal process issues in the proceedings (FSD 235 of 2017 (IKJ) unreported judgment 17 March 2020 at paragraphs 41, 53 and 114 to 134 and neither expert nor the Court suggested there was any deficit in this respect). I think Kawaley J, known, as accepted and reinforced by Mr Adkin, for his openness and transparency, would have commented in his subsequent judgment had he felt that the lack of additional deal process experts had caused a particular difficulty in that case.

24. Each case, of course, must be considered on its own facts and circumstances but I note that Ramsey-Hale J, as she then was, in *Re 58.com Inc*. (FSD 275 of 2020 (MRHJ) unreported judgment, 8 March 2022) was not persuaded that the Court required a deal process expert to determine the fair value of the shares in that case (paragraph 126 of the judgment).

25. On this disputed issue a lot of the evidence focused on the law and practice in Delaware although Mr Adkin was wise to distance his submissions from such, preferring tactically to rest his submissions on the particular facts and circumstances of this case. Although I take into account any helpful guidance from foreign law jurisdictions (such as Delaware), as a judge sitting in the



Grand Court of the Cayman Islands it is, of course, to Cayman Islands law and procedure to which I should turn to first in accordance with my judicial oath.

26. In *Shanda Games Ltd v Maso Capital Investments Ltd* [2020] UKPC 2 Lady Arden, a good friend of the Cayman Islands, referred at paragraph 13 to Segal J's judgment at first instance (FSD 14 of 2016 (NSJ), unreported judgment, 25 April 2017) drawing guidance from Delaware law. Segal J (at paragraph 79) recognised however that "it will also be necessary always to take care and be satisfied that the law and practice developed by such other courts fits and is consistent with other relevant parts of Cayman law and practice." *Shanda* regarded, amongst other issues, fair value and the minority discount point. At paragraph 49 Lady Arden commented to the effect that Cayman Islands courts are able to use the jurisprudence of the Delaware and other courts "if placed before them as a source of guidance on some particular issue. It goes without saying that the jurisprudence of Delaware is of great value in this field. However, it should be borne in mind that there may be different rules in related contexts … In addition there may be different economic and social policy considerations affecting legislation in Delaware." At paragraph 50 it was stated that "The Board takes the view that comparative law whose subject matter is similar to section 238 may provide to varying degrees a useful comparison …". On the disputed issue presently before this Court I have regard to the law and procedure in Delaware but of paramount importance in my mind is the law and procedure of the Cayman Islands.

27. Order 38 rule 4 of the Grand Court Rules ("GCR") refers to the limitation of the number of experts that may be called at trial. Order 38 rule 36 of the GCR refers to restrictions on adducing expert evidence. These rules do not appear to be replicated in Delaware. Mr Imrie refers to the US attorneys engaged by the dissenters in this case and submits that there is scope for the proceedings to become unwieldy and cautions the Court to guard against "an unchecked US legal influence in the directions to be made". Mr Imrie warned the Court in effect against creeping Americanism in these type of cases. As I stated during my exchanges with counsel, the American tail, whether in respect of applications for foreign discovery orders or in respect of expert evidence, should not be allowed to wag the Cayman Islands dog in this case.



28. I am not persuaded that it is necessary or appropriate or in accordance with the overriding objective for there to be deal process experts in this case in addition to valuation experts. It is difficult to see what issue this proposed deal process expert evidence would go to that could not be covered by a competent and properly chosen valuation expert. I am simply not persuaded in this case that there are any issues over and above or alongside valuation issues that can be dealt with by valuation experts that require, in addition to valuation experts, to be dealt with by deal process experts. The parties should carefully choose their valuation experts and ensure that they are in a position to give relevant and helpful opinions to the Court and that they deal with the relevant issues in a simple and straightforward way and in accordance with their onerous duties to the Court.

*Issue 4 – supplemental factual evidence?*

29. Mr Imrie submitted that supplemental affidavits were appropriate because experience in recent cases suggests that it would be helpful to allow for the possibility that one or both experts misapprehended a key factual issue in their first reports, which can and should be clarified in a short supplemental factual affidavit and taken into account in the experts' supplemental reports. For the mistake only to be highlighted in correspondence and become apparent during cross-examination will not assist the Court.

30. Mr Adkin submitted that the Company's proposed direction departs from the standard approach in section 238 cases and makes little sense as all the factual evidence should be finalised before the experts express a concluded view on fair value. Mr Adkin referred to Parker J's judgment in *Re eHi Car Services Limited* (FSD 115 of 2019 (RPJ) unreported judgment, 24 February 2020) at paragraph 58, Mangatal J's judgment in *Re Homeinns Hotel Group* (FSD 75 of 2016 (IMJ), unreported judgment, 7 February 2017) at paragraphs 23 and 24, and the comments of Smellie CJ (as he then was) in *Re JA Solar Holdings Co., Ltd.* (FSD 153 of 2018 (ASCJ), unreported judgment, 18 July 2019) at paragraph 78 (c).

_____
*221202 In the Matter of 51job, Inc. – Judgment – FSD 155 & 156 of 2022 (DDJ)*

Page **10** of **14**



31. In my judgment it is not appropriate to permit supplemental factual evidence. It would be a departure from the spirit of the standard approach to section 238 cases and I am not persuaded that such proposed departure has been justified.

32. There was some general force in Mr Imrie's well considered submission that this Court in effect should feel able to depart from "standard" previous directions or at least to tweak or improve them in furtherance of the overriding objective when such is justified. In my experience the parties at these directions hearings sometimes, when it suits them, try to place too much emphasis on what they describe as "standard" orders made in previous cases. On occasions these are orders which have been agreed in previous cases by the parties by way of compromise and have not been the subject of considered judicial determination. On this disputed issue however the Court has previously made it plain that the factual evidence should be finalised before the experts finalise their reports. I do not think that what the Company proposes would be in accordance with the overriding objective or the approach rightly adopted in previous cases. It would in effect be a second bite at the evidential cherry and despite the restrictions placed in the Company's proposed paragraph 45 it would be open to abuse. If there are clear and obvious factual errors in the reports of experts these can be raised by way of correspondence and the experts can, if appropriate, deal with same. I do not think it is necessary or appropriate to include the Company's proposed paragraph 45 in the directions order.

*Issue 5 – specified disclosure categories*

33. Now agreed.

*Issue 6 – dissenters liberty to apply*

34. Now agreed.

_____
*221202 In the Matter of 51job, Inc. – Judgment – FSD 155 & 156 of 2022 (DDJ)*

Page 11 of 14



*Issue 7 – information requests and timings*

35. I am content with the Company's suggested time periods of 28 days in paragraph 22 and 21 days in paragraph 23 rather than 21 and 14 as contended for by the dissenters. Reasonable time must be provided, in fairness.

*Issue 8 – management meetings transcript costs*

36. Now agreed.

*Issue 9 – management meetings' transcript mechanics and timing*

37. I am content with the Company's suggested paragraphs which are similar to the formulation used in previous cases (see for example paragraphs 32A and 33 of the Directions Order made on 8 November 2021 in *Re 58.com Inc*.).

38. I accept that the purpose of management meetings is to enable the valuers to get, from the horse's mouth so to speak, a better idea of the company's business. I am influenced by the Company's submission that to allow company management to clarify, correct or comment on the relevant passages to be relied upon enables management to speak freely and prevents the management meeting process from being turned into a formal type of deposition or examination. I am content to include paragraphs 33 and 34 of the Company's proposed directions order.

*Issue 10 – "important data" issue*

39. Now agreed.

_____
221202 In the Matter of 51job, Inc. – Judgment – FSD 155 & 156 of 2022 (DDJ)

Page **12** of **14**



*Issue 11 – Schedule of Trades*

40. This was a new issue raised during the course of the hearing. I did not benefit from skeleton arguments on this new issue but I did benefit from the clear, concise and focused oral submissions of Mr Imrie and Mr Adkin. I am content with the Company's suggested wording and Schedule.

41. Mr Adkin referred to the judgment of Margaret Ramsay-Hale J as she then was, in *Re 58.com Inc.* (FSD 275 of 2020 (MRHJ), unreported judgment, 8 March 2022) at paragraphs 85-94 and the reasons of Martin JA (18 August 2022) for refusing leave to appeal which I have considered. Mr Adkin referred to the well-known distinction between materials held by the dissenters which are capable of demonstrating value, and materials which do no more than reveal thoughts or motivation of the dissenters. As Martin JA put it at paragraph 2 "the former should be disclosed, the latter not".

42. Mr Imrie referred to the leading authority of *Re Qunar Cayman Islands Limited* [2018 (1) CILR 199] and in particular paragraph 21 and the comments of Rix JA at paragraphs 78 and 79. In that case, item 4 referred to "A history of the Respondent's trades in the shares of the Company" and item 5 "Confirmation as to whether the Respondents have ever taken a short position in the Company's shares". Rix JA at paragraph 79 stated that "the idea that dissenting shareholders should not be required to disclose their dealings in the shares of a s.238 company seems to me to be inexplicable" and in the circumstances of that case added, "Item 4 may incidentally answer the question in item 5". Rix JA does not appear to have felt that the dissenters should not be required to provide details of any "short" positions in respect of the relevant Company's shares.

43. I am content to adopt the Company's proposed directions and Schedule on this issue. How the Company will be permitted to deploy such documentation will be a matter for determination at trial. Such a direction does not, however, fall foul of the rule against evidence of motivation of the dissenters.

_____
*221202 In the Matter of 51job, Inc. – Judgment – FSD 155 & 156 of 2022 (DDJ)*

Page **13** of **14**

*Issue 12 – privilege question*

44. Adjourned by agreement. Hopefully the parties will be able to agree upon this issue. If not it should properly be brought back before the Court, with concise skeleton arguments setting out the respective positions of the parties.

*Issue 13 – redaction issues*

45. Now agreed.

*Issue 14 – Dissenter's discovery issue*

46. Now agreed.

**Conclusion**

47. I have set out above my determinations on the various issues. The attorneys should provide a draft Order reflecting these determinations. I am minded to order costs in the cause. If any party objects to that they should file and serve concise (no more than 5 pages) written submissions within 14 days and any concise responsive written submissions should be filed within 14 days thereafter and I will decide costs on the papers without a further hearing.



_____
**THE HON. JUSTICE DAVID DOYLE
JUDGE OF THE GRAND COURT**